NATIONAL WESTMINSTER BANK USA, Respondent, v WILLIAM WEKSEL et al., Defendants, and MARKS & KUPERSCHMID, P. C., Appellants.

First Department, February 17, 1987

### APPEARANCES OF COUNSEL

*Arthur P. Hui* of counsel *(Robert E. Kushner* with him on the brief; *Cole & Deitz,* attorneys), for respondent.

*Richard F. Russell* of counsel *(Stephen J. McCahey* with him on the brief; *D'Amato & Lynch,* attorneys), for appellants.

### OPINION OF THE COURT

MURPHY, P. J.

In 1983, plaintiff National Westminster Bank extended Information Displays Incorporated (IDI) a $5,000,000 line of credit and, thereafter, made it a series of loans totaling $3,000,000. In May 1984, IDI, apparently then in default upon the loans, filed a petition pursuant to Bankruptcy Code (11 USC) chapter 11. The present action was commenced by plaintiff bank in February 1985 against IDI's officers (the individual defendants), IDI's accountants, Ernst & Whinney, and IDI's general and SEC counsel, the law firm of Marks & Kuperschmid, P. C. In essence, the complaint alleges that the defendants are guilty of negligence or fraud for portraying IDI as creditworthy when they knew or should have known that it was not. The bank, it is claimed, relied upon the defendants' misrepresentations in making IDI the subject loans and as a consequence was damaged in the amount of $3,000,000.

This appeal concerns the propriety of Special Term's denial of defendant law firm's motion to dismiss the complaint as against it for failure to state a cause of action.

Concerning the law firm, the complaint alleges that, as

general counsel to IDI, Marks & Kuperschmid represented IDI in numerous "sale and lease" transactions. Plaintiff contends that these transactions, although treated for accounting purposes as sales, actually resulted in leasing arrangements which were frequently concluded by IDI's repurchase of its purportedly sold equipment. The mischaracterization of these transactions as sales, claims plaintiff, enabled IDI to claim income far in excess of that which it received or could anticipate receiving. Thus, it is alleged that in various company reports and in a prospectus issued with regard to a public offering of IDI stock, all of which documents were reviewed by defendant law firm prior to their filing with the SEC, IDI misrepresented its net worth and business prospects. Copies of the documents filed with the SEC were subsequently furnished by IDI to plaintiff with, asserts plaintiff, the purpose of inducing it to approve and hold open IDI's line of credit.

The theories pursuant to which plaintiff proposes to hold defendant law firm liable are articulated in paragraphs 41 and 42 of the complaint:

"41. The Bank relied upon said sale and lease transactions, SEC filings, and Company Reports in making and renewing its loans to IDI and M&K knew or should have known that the Bank would so rely. But for the materially misleading statements and omissions contained in the Company Reports and SEC filings, the Bank would not have made the loans.

"42. The SEC filings, Company Reports and sale and lease transactions were false and misleading and omitted to state material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading. The aforesaid acts and omissions of M&K were knowing, reckless, grossly negligent, or negligent. M&K knew or should have known of the falsity of the sale and lease transactions, SEC filings and Company Reports. M&K provided substantial assistance to the wrong effectuated upon the Bank."

■ Initially, it must be noted that insofar as the complaint against defendant law firm sounds in negligence, it is not sustainable. It is well settled that an attorney may not be held liable for negligence in the provision of professional services adversely affecting one with whom the attorney is not in contractual privity (*Calamari v Grace*, 98 AD2d 74; *Levine v Graphic Scanning Corp.*, 87 AD2d 755; *cf. Credit Alliance Corp. v Andersen & Co.*, 65 NY2d 536). As there obviously was

no contractual privity between plaintiff and defendant law firm nor any assertion thereof in the pleading, it should be clear that plaintiff's negligence allegations do not state a claim upon which relief can be granted.

The remaining theory alleged by plaintiff to support its recovery against defendant law firm is that of fraud. It is clear, however, that no cause is stated against the law firm alone for fraud. This is because there is no allegation anywhere in the complaint that the firm made any representation, fraudulent or otherwise, to plaintiff *(see, Glatzer v Scappatura,* 99 AD2d 505). In apparent recognition of this basic deficiency, plaintiff urges that the law firm conspired with its client IDI to defraud the bank and so became a party to IDI's representations. But here again, the complaint is deficient for it contains no allegations of fact from which it can be inferred that there existed an agreement or understanding between the firm and IDI to cooperate in a fraudulent scheme. *(See, Goldstein v Siegel,* 19 AD2d 489, 493.)

Finally, plaintiff urges, that even if its conspiracy theory is inadequately pleaded, defendant law firm may still be found guilty of fraud on the ground that although it did not itself become a party thereto, it nevertheless intentionally and substantially aided and abetted the fraud. *(See, Aeronca, Inc. v Gorin,* 561 F Supp 370 [SDNY 1983]; *Steinberg v Guild,* 22 AD2d 775, *affd* 16 NY2d 791.) We are, however, unable to find any allegation of fact in the subject complaint permitting the inference that defendant law firm knew of or intended to aid its client in the commission of a fraud. Certainly, the law firm's representation of IDI in the above-mentioned sale and lease transactions would not have imparted to it any awareness of a scheme to defraud the bank. Indeed, the transactions which plaintiff in hindsight describes as "sham" were, so far as can be gathered from the complaint, completely unobjectionable at the time they were agreed to. It is only in light of their subsequent alleged misrepresentation as sales that they may be viewed as components of an unfolding fraud. Yet, to have been aware that the sale and lease transactions were being misrepresented in IDI's company reports and prospectus, defendant law firm would have had to know if and how the sale and lease agreements, which apparently admitted of many variations in practice, were carried out. There is none but the barest allegation that defendant law firm had or should have had such knowledge *(see,* complaint ¶ 42, *supra)* and that is plainly not sufficient to meet what the Court of

Appeals has termed "the special pleading standards required under CPLR 3016 (b)". *(Credit Alliance Corp. v Andersen & Co., supra,* at p 554.)*

Similarly, the complaint is devoid of any but the most conclusory allegations *(see,* complaint ¶ 41, *supra)* that defendant law firm knew or should have known that the documents originally prepared for filing with the SEC would be used in connection with obtaining loans from plaintiff bank. There is absolutely no factual allegation in the complaint that the law firm had any involvement in negotiating the loans from which it might have become aware that the IDI company reports were to be submitted to and relied upon by the bank. One would expect that if the law firm had participated at all actively in the process of securing the loans, plaintiff bank would have been aware of this and would have alleged it in the complaint to support the scienter element of its claim.

Considering that the pleading is barren of any allegation of even the most minimal contact or relationship between the law firm and the bank, it may be inquired in what manner the law firm is alleged to have substantially assisted in the commission of a fraud upon the bank. Assuming, arguendo, that the firm knew that the sale and lease transactions were misrepresented in the company reports and that those reports were to be used and indeed relied upon by plaintiff in deciding whether to extend credit to IDI, this does not amount to substantial assistance. Acceptance of these assumptions only warrants the conclusion that defendant law firm, upon learning that the sale and lease transactions were to be misrepresented to plaintiff, did nothing. We know of no case where mere inaction by a defendant has been held sufficient to support aider and abettor liability for fraud *(cf. IIT v Cornfeld,* 619 F2d 909, 927 [2d Cir 1980, Friendly, J.]; Ruder, *Multiple Defendants in Securities Law Fraud Cases: Aiding and Abetting, Conspiracy, In Pari Delicto, Indemnification, and Contribution,* 120 U Pa L Rev 597 [1972]). Here, there was no independent duty to act on the part of defendant law firm. Manifestly, there was no fiduciary relationship between the law firm and the bank. Nor was the firm under any ethical obligation to disclose what knowledge it might have had concerning its client's alleged impending fraud.*

---

* Code of Professional Responsibility, DR 4-101 (C) (3) provides only that "A lawyer *may* reveal * * * [t]he intention of his client to commit a crime" (emphasis added).

It has, of course, long been the practice of the courts to require specificity in the pleading of fraud, and this practice has assumed statutory form in the CPLR 3016 (b) requirement that "the circumstances constituting the wrong [i.e., fraud] shall be stated in detail". The reason for this requirement is that the allegation of fraud necessarily raises a question respecting the subjective intent informing the charged party's conduct. (3 Weinstein-Korn-Miller, NY Civ Prac ¶ 3016.04; *Neiman v Felice, Inc.,* 55 AD2d 521.) Frequently, it is only through the objective circumstances of an alleged fraud that the subjective element of the tort is susceptible of demonstration. Thus, to state a cause of action for fraud, it is often critical that the circumstances of the tort be stated with sufficient specificity to permit the inference of fraudulent intent. Plainly, no cause of action for fraud is made out, nor can one be effectively answered and defended, when the subjective element is summarily alleged without supporting factual detail. *(See, Credit Alliance Corp. v Andersen & Co.,* 65 NY2d, at p 554.)

Where liability for fraud is to be extended beyond the principal actors, to those who, although not participants in the fraudulent scheme, are said to have aided in and encouraged its commission, it is especially important that the command of CPLR 3016 (b) be strictly adhered to. This is because the alleged aider and abettor, by hypothesis, has not made any fraudulent misrepresentation and should not be called to account for the intentional tort of another unless the circumstances of his connection therewith can be alleged in detail from the outset. The nexus between the aider and abettor and the primary fraud is made out by allegations as to the proposed aider's knowledge of the fraud, and what he, therefore, can be said to have done with the intention of advancing the fraud's commission. It is not made out simply by allegations which would be sufficient to state a claim against the principal participants in the fraud.

The case before us illustrates the point well, for the circumstances of the primary fraud are indeed alleged in detail, at least insofar as certain of the individual defendants are concerned, but are not, in our view, detailed sufficiently, to support the further inference of aider and abettor liability on the part of defendant law firm. The only circumstance of the wrong allegedly committed by the law firm that can be gleaned from the instant complaint is that the firm represented IDI. We are thus invited to speculate that in the course

of such representation the firm learned of IDI's fraudulent design and thereafter stood by silently as the bank loaned money in reliance upon what the firm knew were misrepresentations. Doubtless, in the course of representing a client, a lawyer gains access to information about his client's affairs, but the fact of legal representation, even as to transactions allegedly the subject of subsequent misrepresentation, does not itself support the inference of the high degree of scienter necessary to extend fraud liability on an aiding and abetting theory. Indeed, where the actual assistance allegedly given the fraud is not clearly substantial, the allegations of scienter must be all the more detailed if the requisite connection of the purported aider and abettor with the fraud is to be made out. Here, of course, where the only assistance fairly alleged by plaintiff is that of the law firm's nondisclosure, the cause of action is fatally flawed for the reasons previously noted and not even a more detailed pleading of scienter would suffice to rescue it.

Accordingly, the order of the Supreme Court, New York County (Alvin Klein, J.), entered October 1, 1985, which denied defendant-appellant Marks & Kuperschmid's motion to dismiss the complaint as against it pursuant to CPLR 3211 (a) (7) for failure to state a cause of action, should be reversed, on the law, and the motion granted, with costs.

SULLIVAN, ASCH, FEIN and WALLACH, JJ., concur.

Order, Supreme Court, New York County, entered on October 1, 1985, unanimously reversed, on the law, and the motion granted.