CROSSLAND SAVINGS FSB, Plaintiff,

v.

**ROCKWOOD INSURANCE COMPANY, Defendant.**

**ROCKWOOD INSURANCE COMPANY, Third–Party Plaintiff,**

v.

**INTERDISCOUNT, LTD., Jeffrey E. Carter, J.E. Carter Energy and Development Corporation, W. Austin Barsalou and Barsalou and Associates, P.C., Third–Party Defendants.**

**No. 86 Civ. 2438 (PNL).**

United States District Court, S.D. New York.

April 12, 1988.

Roger Curran, Rose, Schmidt, Hasley & Di Salle, Philadelphia, Pa., Rosenman & Colin, New York City, for defendant and third-party plaintiff Rockwood Ins. Co.

Jay G. Safer, Thomas G. Rohback, Ellen August, Le Boeuf, Lamb, Leiby & Mac Rae, New York City, for third-party defendants W. Austin Barsalou and Barsalou and Associates, P.C.

## MEMORANDUM AND ORDER

LEVAL, District Judge.

Third-party defendants, W. Austin Barsalou ("Barsalou") and Barsalou and Associates, P.C. ("Barsalou P.C."), move for partial summary judgment dismissing third-party claims brought by Rockwood Insurance Company ("Rockwood") as its first Cause of Action.

## BACKGROUND

This dispute arises out of a 1984 investment program in the form of a limited partnership. The program was structured as follows: in 1984 InterDiscount Ltd. ("IDL") made a loan to Westwind 1984 Acquisition and Development Program ("Westwind 84"), an oil and gas limited partnership. As an inducement to make the loan, IDL received a Note Pledge Agreement from Westwind 84 which granted IDL a security interest in Investor Notes executed by each of the limited partners of Westwind 84 and which obligated Westwind 84 to obtain surety bonds guaranteeing payment of the Investor Notes. Rockwood issued 21 Surety Bonds securing the repayment of the Investor Notes in which IDL had a security interest. On or about January 1985, IDL assigned to CrossLand Savings FSB ("CrossLand") all its rights in the Note Pledge Agreement and the Investor Notes. Rockwood amended its Surety Bonds to substitute Cross-Land for IDL as beneficiary.

CrossLand brought this action against Rockwood on the Surety Bonds. The complaint alleges that Westwind 84 has defaulted on its obligations under the Note Pledge Agreement, that the Investor Notes have not been paid, and that Rockwood has failed to perform its obligations as surety. Rockwood then brought a third-party action for indemnity. Rockwood's third-party complaint claims that Barsalou and Barsalou P.C. (collectively "the Barsalou defendants"), as counsel for Westwind 84, along with Jeffrey E. Carter and J.E. Carter Energy and Development Corp., the promoters of Westwind 84, fraudulently induced Rockwood to issue the Surety Bonds by false representations that the limited partners of Westwind 84 had made 20% cash contributions. It alleges that the same false representations were made by the Barsalou defendants in a Certificate of Limited Partnership filed with the Texas Secretary of State, the Limited Partnership Placement Memorandum, and the opinion letter issued by the Barsalou defendants as to the legal status of the limited partnership. It alleges further that the Barsalou defendants prepared numerous other false documents intended to deceive Rockwood. Those are the claims which the Barsalou defendants seek to dismiss.

In an affidavit submitted by Rockwood in opposition to the motion, Richard Gerulat, who acted as a broker for the Carter defendants in finding an insurer for Westwind 84, avers that the Barsalou defendants were aware that Rockwood would be the surety for Westwind 84 and that Gerulat asked Barsalou for an opinion letter about Westwind 84 for Rockwood. There are no averments that Barsalou provided that letter to Rockwood or that, if it did, the letter was prepared specifically for Rockwood.

Upon these allegations, Rockwood predicates claims against the Barsalou defendants for professional malpractice, fraud, and violations of the Racketeer Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*

The First Cause of Action, the target of the Barsalou defendants' motion for summary judgment, alleges that the Barsalous committed professional malpractice as attorneys by failing to exercise professional care to ensure the accuracy of the information they provided to Rockwood with knowledge it would rely on such information.

## DISCUSSION

This case presents the issue whether an attorney can be held liable for negligence toward a third party who is not in a relationship of contractual privity with the attorney but who is expected nonetheless to rely on the attorney's statement. The Barsalou defendants argue that the absence of

any contractual relationship between them and Rockwood is fatal to Rockwood's cause of action for negligence. Rockwood counters that its relationship with the Barsalou defendants is sufficiently close to privity to entitle it to bring an action for negligence.

### 1. *Choice of Law*

As an initial matter, I must determine the law to be applied to this claim. The Barsalou defendants contend that Texas law should be applied to the issue of the scope of liability of a Texas lawyer for professional negligence in performing legal work for a Texas client in Texas. Alternatively, they argue that New York law should be applied because the parties entered into the loan agreement in New York and repayment of the loan was to be made in New York. Rockwood argues that Pennsylvania law should be applied because that state as the state of Rockwood's principal place of business has the greatest interest in the transaction.

■ Applying the choice of law rules of New York, *see Klaxon v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), I conclude that New York law should be applied to this matter. New York courts apply a governmental interest or grouping of contacts analysis in determining the law to be applied in a tort action, *see Schultz v. Boy Scouts of America,* 65 N.Y.2d 189, 196, 491 N.Y.S.2d 90, 96, 480 N.E.2d 679, 683 (1985); the substantive tort law of the state which has the "most significant relationship with the occurrence and with the parties" is applied. *Babcock v. Jackson,* 12 N.Y.2d 473, 484, 240 N.Y.S.2d 743, 752, 191 N.E.2d 279 (1963). Where interest analysis does not point clearly to the application of another state's law, the law of the place where the tort occurred prevails. *See Mikropul Corp. v. Desimone & Chaplin–Airtech, Inc.,* 599 F.Supp. 940, 942–43 (S.D.N.Y. 1984); *Bing v. Halstead,* 495 F.Supp. 517, 520 (S.D.N.Y. 1980); *Neumeier v. Kuehner,* 31 N.Y.2d 121, 128, 286 N.E.2d 454, 335 N.Y.S.2d 64 (1972). In particular, where the tort is one of misrepresentation, the substantive law of the state in which the misrepresentation

is made and the parties have taken action in reliance thereon is applicable. Restatement (Second) Conflict of Laws § 148 (1981).

New York law should be applied here. The transaction at the heart of this case—the loan agreement made to Westwind 84—was negotiated and consummated in New York. *See Fort Howard Paper Co. v. William D. Witter, Inc.,* 787 F.2d 784, 795 (2d Cir.1986) (New York has greatest interest in alleged fraud because of its concern with transaction underlying fraud). Both Cross-Land and IDL have their principal places of business and offices in New York. Finally and most important, the third-party complaint alleges that the Barsalou defendants made the alleged misrepresentation through documents that they provided to Rockwood in New York (Third Party Complaint ¶¶ 27–28) and that they were present at the closing of the transaction in New York. (*Id.* ¶ 29.) The misrepresentations allegedly made in New York were thus acted upon in New York when Rockwood closed the transaction there. *See Furniture Consultants, Inc. v. Datatel Minicomputer Co.,* slip op., 85 Civ. 8518 (RCC) (July 10, 1986) [available on WESTLAW, 1986 WL 7792].

Although Texas does have some interest in the regulation of professionals licensed to practice in that state, *see Mikropul Corp. v. DeSimone & Chaplin–Airtech, Inc.,* 599 F.Supp. 940, 942–43 (S.D.N.Y. 1984), I find that the interests of New York in regulating conduct within its borders outweighs those of Texas. *See Machleder v. Diaz,* 801 F.2d 46, 52 (2d Cir.1986), *cert. denied,* 479 U.S. 1088, 107 S.Ct. 1294, 94 L.Ed.2d 150 (1987); *Fort Howard Paper Co. v. William D. Witter, Inc.,* 787 F.2d 784, 795 (2d Cir.1986); *Schultz v. Boy Scouts of America, Inc.,* 65 N.Y.2d 189, 196, 491 N.Y.S.2d 743, 752, 191 N.E.2d 279 (1985). The interest that Pennsylvania has in this transaction—as the state in which Rockwood resides and has its principal place of business—is insufficient to override New York's interest in the regulation of conduct within its borders. New York courts do not apply the law of the plaintiff's state of residence when most of the

relevant events occur elsewhere. *See Cameron v. G & H Steel Service, Inc.*, 494 F.Supp. 171, 173 (E.D.N.Y.1980); *Hotaling v. Smith*, 63 A.D.2d 219, 406 N.Y.S.2d 627 (2d Dept.1978). I thus conclude that New York law should be applied to Rockwood's claim for negligence.

2. *The Barsalou Defendants' Duty to Rockwood*

■ The Barsalou defendants ask the Court to grant them summary judgment on the uncontroverted fact that there was no contractual privity between them and Rockwood. Rockwood argues that it is entitled to bring an action against Barsalou because (i) Rockwood's relationship with Barsalou approached privity, (ii) Barsalou knew that Rockwood would rely on his advice, (iii) Rockwood was a third-party beneficiary to Carter's contract with Barsalou, and (iv) Rockwood is subrogated to CrossLand's claims against Barsalou. I conclude that the First Cause of Action for negligence must be dismissed.

Prior to the New York Court of Appeal's decision in *Credit Alliance Corp. v. Arthur Andersen & Co.*, 65 N.Y.2d 536, 483 N.E.2d 110, 493 N.Y.S.2d 435 (1985), the law in New York provided that an attorney could not be held liable for professional negligence in favor of one with whom the attorney was not in contractual privity. *See Calamari v. Grace*, 98 A.D.2d 74, 469 N.Y.S.2d 942 (2d Dept.1983) ("New York authorities do not extend liability in situations where the act of misfeasance or nonfeasance may cause injury to a third party with whom there is no privity, provided that the attorney is charged merely with simple negligence"); *Joffe v. Rubenstein*, 24 A.D.2d 752, 263 N.Y.S.2d 867 (1965), *app. dism.*, 21 N.Y.2d 721, 287 N.Y.S.2d 685, 234 N.E.2d 706 (1968); *Re Cushman*, 95 Misc. 9, 160 N.Y.S. 661 (1916). Concerned with the indefinite expansion of liability for honest blunders, as, for example, where a lawyer certified his opinion as to the validity of a municipal bond, New York adhered to the majority rule that liability for negligent representations was "bounded by the contract and [was] to be enforced between the parties by whom the contract has been made." *Ultramares Corp. v. Touche*, 255 N.Y. 170, 189, 174 N.E. 441 (1931); *see* Shaw, *Attorney's Liability to One Other Than His Immediate Client for Consequences of Negligence in Carrying Out Legal Duties*, 45 A.L.R.3d 1181 (1972). In particular, the imposition of liability on an attorney to a third party may impose strains on the attorney-client privilege and on the injunction of the Model Rules of Professional Conduct that an attorney represent his client zealously. Thus one court held, in *Re Cushman*, 95 Misc. 9, 160 N.Y.S. 661 (1916), that an attorney who had negligently misrepresented that there were no dower rights outstanding on his client's property could not be held liable in negligence to persons who purchased the property in reliance on that representation.

Plaintiffs contend that in *Credit Alliance Corp. v. Arthur Andersen & Co.*, 65 N.Y.2d 536, 483 N.E.2d 110, 493 N.Y.S.2d 435 (1985), New York by implication relaxed the standards for the imposition of liability on attorneys. That contention is meritless. In *Credit Alliance*, the Court of Appeals undertook an extensive analysis of the liability of *accountants* to third parties who rely on their negligently prepared financial reports. The Court restated the rule that "a relationship 'so close as to approach that of privity' remains valid as the predicate for imposing liability upon accountants to noncontractual parties." *Id.* at 546, 483 N.E.2d 110, 493 N.Y.S.2d 435. Before accountants could be held liable in negligence to noncontractual parties, the court held that the plaintiff must show: "(1) that the accountants must have been aware that the financial reports were to be used for a particular purpose or purposes; (2) in furtherance of which a known party or parties was intended to rely; and (3) there must have been some conduct on the part of the accountants linking them to that party or parties, which evinces the accountants' understanding of that party or parties' reliance." *Id.* at 551, 483 N.E.2d 110, 493 N.Y.S.2d 435.

The Court of Appeals' decision, however, was limited to accountants. It did not imply that attorneys are exposed to claims of

negligence brought by parties having no contractual relationship with the attorney. As to such claims, the issues of the attorney-client privilege might present far more difficult problems than are present in the case of accountants. To the extent that an attorney is held to a duty of care to third parties with whom he is not in a relation of privity, his own interests may conflict with those of his client's. For example, to protect himself from a lawsuit brought by a third party, the attorney may be induced to reveal the confidences of his client or otherwise to act in a manner adverse to his client's interests.

New York courts have not extended the reasoning of *Credit Alliance* beyond its application to accountants.[1] The New York courts have repeatedly reaffirmed the rule that an attorney may not be held liable in negligence by one with whom he is not in contractual privity. *See Michalic v. Klat*, 128 A.D.2d 505, 512 N.Y.S.2d 436 (2d Dept. 1987); *National Westminster Bank U.S.A. v. Weksel*, 124 A.D.2d 144, 511 N.Y.S.2d 626 (1st Dept.1987); *Viscardi v. Lerner*, 125 A.D.2d 662, 663–64, 510 N.Y.S.2d 183 (2d Dept.1986); *Grenoble Mills, Inc. v. Drinker, Biddle & Reath*, slip op., No. 84 Civ. 3514 (S.D.N.Y. July 30, 1986) (MGC) [available on WESTLAW, 1986 WL 8697] (absence of attorney-client relationship fatal to cause of action for negligence). The Appellate Division, Second Department, stated in *Viscardi v. Lerner*, 125 A.D.2d at 664, 510 N.Y.S.2d 183, "While ... the privity requirement has been relaxed in certain areas of professional malpractice, courts of this State have not departed from this requirement in legal malpractice cases."

In *Westminster Bank U.S.A. v. Weksel*, 124 A.D.2d 144, 511 N.Y.S.2d 626 (1st Dept. 1987), the Appellate Division, First Department, held that a bank which extended credit to a corporation that subsequently went bankrupt could not maintain a cause of action for negligence against the corporation's law firm for misrepresentations contained in the corporation's SEC filings and other reports prepared by the attorneys. In blanket terms, the court stated that the absence of any contractual privity between the plaintiff and the law firm was fatal to the plaintiff's cause of action: "It is well settled that an attorney may not be held liable for negligence in the provision of professional services adversely affecting one with whom the attorney is not in contractual privity." *Id.* 511 N.Y.S.2d at 628.

The allegations in the third-party complaint and the affidavits submitted in opposition to the motion are inadequate to meet this threshold requirement. While Rockwood need only establish the existence of a genuine issue of material fact on this motion, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986), the affidavits it has submitted establish only that the Barsalou defendants, in their capacity as counsel to Westwind 84, mailed or caused to be mailed certain documents to Rockwood and that the Barsalou defendants were present at the closing in New York. Even if the Barsalou defendants were aware that Rockwood would be the surety for Westwind 84 and that Rockwood would rely on the documents that they had prepared, that is not a sufficient basis for liability in negligence under the New York rule. There is no evidence whatsoever that the Barsalou defendants ever took any action at the request of Rockwood, and it is uncontested that at no time did Barsalou act as attorney for Rockwood.

Rockwood's contention that it is third-party beneficiary to the contract between the Carter defendants and the Barsalou defendants has no basis in fact. New York has adopted the Restatement test for the

---

1. In a series of cases, the New York Court of Appeals has affirmed the dismissal of actions for negligence brought by subcontractors against architects where there was no direct contractual relationship or third party beneficiary relationship. *See Widett v. U.S. Fidelity & Guaranty Co.*, 815 F.2d 885 (2d Cir.1987) (discussing *Alvord and Swift v. Stewart M. Muller Constr. Co.*, unpublished (Sup.Ct. Sept. 9, 1976), *aff'd without opinion*, 56 A.D.2d 761, 391 N.Y.S.2d 1012 (1st Dept.1977), *aff'd with opinion*, 46 N.Y.2d 276, 413 N.Y.S.2d 309, 385 N.E.2d 1238 (1978); *Underhill Constr. Co. v. New York Telephone Co.*, N.Y.L.J. Sept. 15, 1976, at 11, col. 1 (Sup.Ct.1976), *aff'd as modified*, 56 A.D.2d 760, 391 N.Y.S.2d 1000 (1st Dept.1977), *aff'd without opinion*, 44 N.Y.2d 666, 405 N.Y.S.2d 40, 376 N.E.2d 201 (1978)).

existence of a third-party beneficiary relationship under which a party is an indended beneficiary under a contract if either "the performance of the promise will satisfy an obligation of the promissee to pay money to the beneficiary" or "the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance." *Fourth Ocean Putnam Corp. v. Interstate Wrecking Co.*, 66 N.Y. 2d 38, 485 N.E.2d 208, 495 N.Y.S.2d 1, 5 (1985) (*quoting* Restatement (Second) of Contracts § 302(2) (1981)); *see Greenwood Packing Corp. v. Triangle Meat & Provisions Corp.*, 120 A.D.2d 701, 502 N.Y.S.2d 770 (2d Dept.1986) (dismissing third-party beneficiary claim for plaintiff's failure to establish that contract was made with the intent to benefit plaintiff). Rockwood has not controverted Barsalou's assertion that at no time did Rockwood ever have an attorney-client relationship with Barsalou. It has not proffered the contract between Carter and Barsalou or any other evidence indicating that the attorney-client relationship between those parties was designed to benefit Rockwood. It has not pleaded that it was a third-party beneficiary to the contract between Carter and Barsalou. In the absence of any evidence, the mere conclusory allegations in Rockwood's memorandum in opposition are insufficient to overcome the motion for summary judgment.

In the alternative, Rockwood argues that it is subrogated to the rights of CrossLand and that CrossLand, as an assignee of IDL, was in privity with the Barsalou defendants. It thus contends that it may bring an action as subrogee for negligence against the Barsalou defendants. For this argument, it relies exclusively on a statement in Barsalou's opinion letter that "This opinion may be relied upon by IDL and its assignee under the Agreement."

Whatever consequences might follow if Rockwood amended its complaint to assert a claim for subrogation, it is sufficient to answer at this point that Rockwood has not asserted that claim in its complaint. The first Cause of Action alleges that the Barsalou defendants breached a duty running to Rockwood. That cause of action is insufficient under New York law. The com-

plaint nowhere alleges that the Barsalou defendants had a duty to IDL which they breached. Perhaps as a consequence, the parties have not extensively briefed the issue of the effect of Barsalou's representation to IDL that the opinion letter might be relied upon by IDL. I therefore do not pass on the question whether Rockwood may amend its complaint to assert a cause of action in a representative capacity or whether such an amendment would state a cause of action under New York law.

## CONCLUSION

Summary judgment dismissing the first cause of action is granted.

SO ORDERED.