CROSSLAND SAVINGS FSB, Plaintiff,

v.

ROCKWOOD INSURANCE COMPANY, Defendant.

ROCKWOOD INSURANCE COMPANY, Third–Party Plaintiff,

v.

INTERDISCOUNT, LTD., Jeffrey E. Carter, J.E. Carter Energy and Development Corporation, W. Austin Barsalou and Barsalou and Associates, P.C., Third–Party Defendants.

No. 86 Civ. 2438 (PNL).

United States District Court, S.D. New York.

Dec. 5, 1988.

Rose, Schmidt, Hasley & DiSalle, Pittsburgh, Pa. (Richard DiSalle, of counsel), Rosenman & Colin, New York City, for defendant and third-party plaintiff.

LeBoeuf, Lamb, Leiby & MacRae, New York City (Thomas G. Rohback, Ellen August, George B. Schwab, of counsel), for third-party defendants W. Austin Barsalou and Barsalou and Associates, P.C.

## OPINION AND ORDER

LEVAL, District Judge.

Third-party defendants, W. Austin Barsalou and Barsalou & Associates, P.C. (collectively "Barsalou") move, pursuant to Fed.R.Civ.P. Rule 56, for partial summary judgment dismissing the first, second and third causes of action in third-party plaintiff Rockwood Insurance Company's ("Rockwood") amended third-party complaint.

## BACKGROUND

In the main action plaintiff Crossland Savings FSB sues the surety, Rockwood Insurance Company on its bond guaranteeing payment of investor notes. The dispute arises out of a 1984 investment program in an oil and gas limited partnership, Westwind 1984 Acquisition and Development Program ("Westwind 84"). The promoters of the program were defendants Jeffrey E. Carter and J.E. Carter Energy and Development Corp.[1] The attorney for Carter in the promotion of the program was third-party defendant Barsalou. Westwind 84 was financed in part by InterDiscount Ltd. ("IDL") which made a loan to the program in exchange for security interests in Investor Notes of the limited partners guaranteed by Surety Bonds of the defendant Rockwood. Those Notes and Surety Bonds were assigned by IDL to plaintiff Crossland which has not been paid on the Notes and brings suit against Rockwood to recover on its Bonds.

In its initial third-party complaint, Rockwood sought indemnification. It alleged that if it were held liable on its Surety Bonds, liability should ultimately rest with Barsalou (as well as the Carter defendants) on the grounds that they fraudulently in-

---

1. Carter and J.E. Carter Energy and Development Corp. have not made an appearance in this action and are in default.

duced Rockwood to issue the Surety Bonds. Rockwood alleged that Barsalou and the Carter defendants falsely represented, in their promotional materials and in an attorney opinion letter, that the limited partners of Westwind 84 had made a paid-in investment in the partnership and were all persons of substantial means who would be able to fulfill their obligations under the Investor Notes. It alleged that the limited partners had in fact made no payments to the partnership.

By Memorandum and Order of April 12, 1988, 692 F.Supp. 1510, I granted the Barsalou's motion for partial summary judgment dismissing Rockwood's claim of attorney malpractice consisting of the Barsalou's failure to exercise professional care to ensure the accuracy of information provided Rockwood. I found that under the laws of New York, which I determined to be applicable to the action, an attorney cannot be held liable in negligence toward a third party with whom she is not in a relation of privity or near-privity. The evidence submitted by Rockwood that Barsalou was aware Rockwood would act as surety and would rely on the documents Barsalou prepared was insufficient to establish an actionable duty of care on the part of Barsalou toward Rockwood under New York law.[2]

Rockwood also argued in its memorandum that, as subrogee of Crossland, it had a cause of action for negligence and professional malpractice. Such a liability would not necessarily have been foreclosed by the New York privity requirement if Crossland had been in privity or a sufficiently close relationship. However, the third-party complaint did not assert a claim on this theory. I therefore ruled that the issue of the sufficiency of any such claim was not properly presented by the earlier motion. By order of May 3, 1988 I permitted Rockwood to amend its complaint to assert such a claim.

The amended third-party complaint asserts first a direct claim for negligence against Barsalou (which is hereby dismissed on the grounds that it is precluded by my earlier grant of summary judgment) and two separate claims against Barsalou as subrogee of Crossland. These claims assert that the Barsalou defendants (along with the Carter defendants) made negligent misrepresentations to Crossland which caused its loss and that, as Crossland's surety, Rockwood is subrogated to the claims of Crossland against Barsalou for negligence and professional malpractice.

These claims assert liability for Barsalou's negligent preparation of an opinion letter addressed to IDL. The Barsalou letter opens with the introduction stating that "[w]e have acted as special counsel to the Westwind 1984 Acquisition and Development Program." It then proceeds to make various representations concerning the Partnership which Rockwood alleges to be materially false. The letter concludes "This opinion may be relied upon by IDL and its assignee under the Agreement." Barsalou Aff. Exh. A. The evidence from the deposition of Barsalou is to the effect that Barsalou was asked to prepare and sign the letters by his client, Carter, because IDL had requested the letter. Rohback Aff. Exh. C. The letter was drafted by counsel to IDL, the law firm of Henderson, Coplich and Carter. *Id.* Exh. B; Barsalou Aff. ¶ 3. At the time Barsalou signed the letter, he did not know whether IDL would assign its rights or, if so, to whom. Rohback Aff. Exh. D. Indeed, prior to the closing of the transaction, he had no contact with anyone at Crossland. *Id.* Exh. F; Barsalou Aff. ¶ 5.

Barsalou moves for summary judgment on these causes of action.

## DISCUSSION

The granting of a motion for summary judgment under Fed.R.Civ.P. 56 is appro-

---

**2.** Rockwood moved for reconsideration by letter dated April 15, 1988, submitting evidence to the effect that in connection with other prior deals, Barsalou addressed opinion letters to Rockwood. I denied that motion, ruling that "A relationship of privity between Rockwood and the Barsalou firm in other transactions would not satisfy the New York rule in an action based on this transaction in which no privity has been shown." Memorandum and Order of April 22, 1988.

priate only where "there is no genuine issue as to any material fact" and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The court must resolve all ambiguities and draw all reasonable inferences in favor of the party against whom summary judgment is sought. *Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 57 (2d Cir. 1987); *Heyman v. Commerce and Industry Ins. Co.*, 524 F.2d 1317, 1320 (2d Cir. 1975). If the moving party shows facts that would entitle it to judgment, the party against whom summary judgment is sought must make a sufficient showing that a factual question exists as to each element on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

Barsalou argues it cannot be held for negligence and malpractice in favor of Crossland because it did not even know of the existence of Crossland prior to the closing of the transaction and because the imposition of a duty of care to a third party would be inconsistent with the attorney's duty to represent his client zealously.[3] In addition, it argues that any claim Rockwood might have as subrogee of Crossland is barred under New York's three-year statute of limitations for attorney malpractice. N.Y.C.P.L.R. § 214(6).

### 1. *Statute of Limitations*

Barsalou's alleged misrepresentations were contained in an opinion letter dated January 7, 1985. Barsalou Aff. Exh. A. Rockwood's subrogation claims were not filed until May 1988. Barsalou thus contends that Rockwood's claims for subrogation are barred by New York's three-year statute of limitations for tort actions. *See* N.Y.C.P.L.R. § 214(6); *Jewish Guild for the Blind v. Senor*, 93 A.D.2d 764, 765, 461 N.Y.S.2d 331, 333 (1st Dept.) (cause of action accrues upon the performance of the

work by the professional), *vacated on other grounds*, 95 A.D.2d 681, 464 N.Y.S.2d 369 (1st Dept.1983); *Albany Savings Bank v. Caffry, Pontiff, Stewart, Rhodes & Judge*, 95 A.D.2d 918, 919, 463 N.Y.S.2d 896 (3d Dept.1983) (same); *Gilbert Properties, Inc. v. Millstein*, 40 A.D.2d 100, 338 N.Y.S.2d 370 (1st Dept.1972), *aff'd*, 33 N.Y. 2d 857, 352 N.Y.S.2d 198, 307 N.E.2d 257 (1973).

Rockwood responds that the claim for subrogation relates back to its timely claim in its individual capacity against Barsalou. Fed.R.Civ.P. 15(c). It argues that the claim in its amended third-party complaint arose out of the same conduct alleged in the original complaint and that therefore the claim relates back to the filing of the original complaint under Fed.R.Civ.P. 15(c).

Fed.R.Civ.P. 15(c) provides that "[w]henever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading." When the amendment changes the party against whom a claim is asserted or adds an additional defendant, the claim relates back if it arose out of the same conduct and the party "(1) has received such notice of the institution of the action that the party will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party." Although the Rule does not specifically refer to amendments adding plaintiffs or changing the capacity of the plaintiff, the principles regarding changes in defendants "extend[ ] by analogy to amendments changing plaintiffs." Fed.R.Civ.P. 15(c) advisory committee note on 1966 amendment; *Stoppelman v. Owens*, 580 F.Supp. 944, 946 (D.D.C.1983); *Unilever (Raw Materials), Ltd. v. M/T*

---

**3.** Neither Barsalou nor Rockwood has cited authority that the elements of a claim for negligent misrepresentation and professional malpractice differ under New York law. For the purposes of this motion, I assume that they are identical. *See Greycas, Inc. v. Proud*, 826 F.2d 1560, 1564 (7th Cir.1987) (questioning whether negligent misrepresentation and malpractice are different torts when misrepresentations are made by lawyers), *cert. denied*, —— U.S. ——, 108 S.Ct. 775, 98 L.Ed.2d 862 (1988).

*Stolt Boel,* 77 F.R.D. 384, 388 (S.D.N.Y. 1977).

Barsalou argues that Rockwood's addition of a claim as subrogee constitutes the assertion of a claim by a new plaintiff which is untimely.

There is authority that an amendment which adds a claim by the plaintiff in another capacity relates back to the original complaint even if the plaintiff has not given the defendant timely notice of the claim in the new capacity. *See Missouri, Kansas, & Texas Ry. Co. v. Wulf,* 226 U.S. 570, 33 S.Ct. 135, 57 L.Ed. 355 (1913) (individual originally suing in personal capacity for wrongful death permitted to assert claim as administratrix); *Siegel v. Converters Transportation, Inc.,* 714 F.2d 213 (2d Cir. 1983) (claim brought on behalf of corporation relates back to claim by shareholder in personal capacity); *Raynor Bros. v. American Cyanimid Co.,* 695 F.2d 382 (9th Cir. 1982) (partnership substituted for corporation where major stockholders were also partners in substituted partnership and the two entities had an identity of interest); *Staggers v. Otto Gerdau Co.,* 359 F.2d 292 (2d Cir.1966) (substitution of administrator of estate); *Russell v. New Amsterdam Casualty Co.,* 303 F.2d 674 (8th Cir.1962) (suit as personal representative substituted for action in individual capacity); *Stoppelman v. Owens,* 580 F.Supp. 944 (D.D.C. 1983) (amendment adding additional limited partners as plaintiffs relates back to filing of original complaint by other limited partners); *Unilever (Raw Materials), Ltd. v. M/T Stolt Boel,* 77 F.R.D. 384 (S.D.N.Y. 1977) (real party in interest—consignor can be substituted for shipper when consignor not shipper held bill of lading). In most of those cases, the original plaintiff and the substituted plaintiff had an identity of interest so that notice of the possible amendment could be imputed from the institution of the initial action. *Cf. Schiavone v. Fortune,* 477 U.S. 21, 28, 106 S.Ct. 2379, 2383–84, 91 L.Ed.2d 18 (1986) (noting identity of interest exception followed by courts of appeals). In effect, the new plaintiff was "'involved in [the proceedings] unofficially from an early stage.'" *Leachman v. Beech Aircraft Corp.,* 694 F.2d 1301, 1309 (D.C.Cir.1982) (quoting 3 J. Moore, *Moore's Federal Practice* ¶ 15.15[4.–1], at 15–220 (1982)).

It is questionable whether a principle that depends on identity of interest would be applicable here; Rockwood's claim as subrogee is independent of its claim in its individual capacity. Where there is not an identity of interest, the courts have also permitted the assertion of claims in a new capacity or the addition of new plaintiffs if the claims arise out of the same nucleus of operative fact and the defendant has notice of the new claim within the applicable time period. *See Williams v. United States,* 405 F.2d 234 (5th Cir.1968) (claim of parent in FTCA case relates back to claim of minor plaintiff for whose benefit she was bringing suit); *Snoqualmie Tribe of Indians ex rel. Skykomish Tribe of Indians v. United States,* 372 F.2d 951 (Ct.Cl.1967); *Nielsen v. Professional Financial Management, Ltd.,* 682 F.Supp. 429 (D.Minn.1987); *Soler v. G & U, Inc.,* 103 F.R.D. 69 (S.D.N.Y.1984). *Compare Leachman v. Beech Aircraft Corp.,* 694 F.2d 1301, 1309 (D.C.Cir.1983) ("touchstone ... is whether the defendant knew or should have known of the existence and involvement of the new plaintiff"); *Pappion v. Dow Chemical Co.,* 627 F.Supp. 1576, 1581 (W.D.La.1986) (defendant had no notice of survival claims of children of decedent). What is necessary is that the defendant within the statute of limitations period have "fair notice that a legal claim existed in and was in effect being asserted by, the party belatedly being brought in." *Williams,* 405 F.2d at 238.

In *Andujar v. Rogowski,* 113 F.R.D. 151 (S.D.N.Y.1986), for example, the court held that the claims of three migrant farm workers who were unlawfully evicted from worker housing would relate back to claims filed by other workers where their claims concerned the same transaction, the complaint gave the defendants notice that other plaintiffs might be involved, and the additional plaintiffs participated in settlement negotiations. *Id.* at 159. The court stated: "[w]hen the proposed amendment would add a newly asserted claim made in

another capacity by the original plaintiff or would add a new plaintiff who makes a distinct or aggregate claim, ... Rule 15(c) demands some kind of notice of the new party and its claim beyond notice, afforded by institution of the original suit, of the transaction or occurrence out of which the claim arises." *Id.* at 156.

■ In my opinion, Rockwood's claim as subrogee relates back to its original third-party complaint. First, the claims by Rockwood in its individual capacity and as subrogee of Crossland derive from the same transaction or occurrence. The standard for determining when allegations derive from the same transaction or occurrence is "very liberal." *Tri–Ex Enterprises, Inc. v. Morgan Guaranty Trust Co.*, 586 F.Supp. 930 (S.D.N.Y.1984); *see Villante v. Department of Corrections*, 786 F.2d 516, 520 (2d Cir.1986). " 'When a suit is filed in a federal court under the Rules, the defendant knows that the whole transaction described in it will be fully sifted, by amendment if need be.' " *Siegel v. Converters Transportation, Inc.*, 714 F.2d 213, 216 (2d Cir.1983) (quoting *Barthel v. Stamm*, 145 F.2d 487, 491 (5th Cir.1944), *cert. denied*, 324 U.S. 878, 65 S.Ct. 1026, 89 L.Ed. 1430 (1945)). In this case, the allegations of the original third party complaint virtually mirror those in the amended complaint. Both complaints are based on the allegation of the same negligent conduct of Barsalou in issuing an opinion letter and other documents regarding Westwind 84; both allege that in these documents, Barsalou falsely represented that the cash down payments required of the limited partners had been made, that the signatures on the notes were genuine, and that the limited partners were persons of substantial means. Barsalou has not pointed to any prejudice that it will suffer by the addition of the claims by Rockwood as subrogee.

Second, the initial third-party complaint itself might have alerted Barsalou to Rockwood's claim as subrogee of Crossland. The pleading asserts that Rockwood is bringing the action to recover "the amount of any sums for which Rockwood could be held liable to plaintiff." Among the documents that it alleges contained misrepresentations was the opinion letter which referred to "IDL and its assignee."

Finally, Barsalou had notice within the statute of limitations period that Rockwood was asserting claims in its capacity as subrogee of Crossland. On December 8, 1987, within the period, Rockwood filed a Memorandum of Law in Opposition to Barsalou's motion for partial summary judgment in which it asserted that it is subrogated to Crossland and, in that capacity, has a right of action against Barsalou for negligence and malpractice. These are the claims later filed in Rockwood's amended pleadings. The failure to allege them in an amended complaint while pleading them in a memorandum was perhaps a mistake. But the memorandum, which was filed and served before the statute of limitations had run, was sufficient to put the defendant on notice that Rockwood would be asserting claims as a subrogee. *See Nielsen v. Professional Financial Management, Ltd.*, 682 F.Supp. 429, 436–36 (D.Minn.1987).

Barsalou's argument to the contrary is not persuasive. It asserts that Rockwood as subrogee may not assert rights greater than Crossland itself would have in its individual capacity. It notes correctly that Rockwood is subject to all the defenses that Barsalou could assert against Crossland directly including the statute of limitations. *See Mentis v. United States Postal Service*, 547 F.Supp. 164 (W.D.N.Y.1982); *State Farm Mutual Auto Insurance Co. v. Regional Transit Service, Inc.*, 79 A.D. 2d 858, 434 N.Y.S.2d 486 (4th Dept.1980); *Seven Sixty Travel, Inc. v. American Motorists Insurance Co.*, 98 Misc.2d 509, 513, 414 N.Y.S.2d 254 (Sup.Ct.1979), *aff'd*, 73 A.D.2d 761, 423 N.Y.S.2d 458 (3d Dept. 1979). Because the filing of Rockwood's direct claim against Barsalou would not toll Crossland's time to file a claim against Barsalou, *see Curry v. Johns–Manville Corp.*, 93 F.R.D. 623 (E.D.Pa.1982); *Pizzuro v. Waterman Steamship Lines, "Stonewall Jackson"*, 31 F.R.Serv.2d 1428 (S.D.N.Y.1981); *Straub v. Desa Industries, Inc.*, 88 F.R.D. 6, 9 (M.D.Pa.1980), Barsalou contends that it cannot toll Rockwood's time to bring an action asserting Crossland's rights.

In *Curry* and *Pizzuro*, however, the only question was whether a third-party complaint by itself tolled the plaintiff's time to commence a direct action against the third-party defendant. The plaintiffs in those cases had given the third-party defendants no notice of the possible institution of direct claims.[4] Indeed, the court in *Curry* found that "third-party defendants may have inferred quite reasonably that plaintiffs' failure to take prompt action to assert direct claims against them was a matter of deliberate tactical choice, not error." *Curry v. Johns–Manville Corp.*, 93 F.R.D. 623, 627 (E.D.Pa.1982). It does not follow from these cases that a claimant may not amend its pleading to press a claim as subrogee when it has timely given notice. *See* C. Wright & A. Miller, *Federal Practice & Procedure* § 1498, at 513 (1971). Rockwood gave Barsalou timely notice that it would press claims as subrogee; it may therefore amend its pleadings to allege those claims.[5]

2. *Liability for Negligent Opinion Letters*

Barsalou moves for summary judgment on Rockwood's claims as subrogee of

Crossland. It argues that Rockwood has produced no evidence that Barsalou was retained by Crossland and, therefore, Barsalou cannot be held liable to Crossland in negligence or malpractice.

The law is settled in New York that an attorney may not ordinarily be held liable in negligence towards third parties with whom he is not in a relationship of privity.[6] *See Michalic v. Klat*, 128 A.D.2d 505, 512 N.Y.S.2d 436 (2d Dept.1987); *National Westminster Bank U.S.A. v. Weksel*, 124 A.D.2d 144, 511 N.Y.S.2d 626 (1st Dept. 1987); *Viscardi v. Lerner*, 125 A.D.2d 662, 663–64, 510 N.Y.S.2d 183, 185 (2d Dept. 1986). It was on the basis of this rule that I dismissed Rockwood's direct claim against Barsalou for malpractice.

It has been stated that "New York has not retreated from the requirement of privity in legal malpractice cases." *Calamari v. Grace*, 98 A.D.2d 74, 79, 469 N.Y.S.2d 942, 945 (2d Dept.1983); *see also Quintel Corp., N.V. v. Citibank, N.A.*, 589 F.Supp. 1235, 1241 (S.D.N.Y.1984) ("In attorney malpractice actions, privity appears to remain the rule in New York."); *Viscardi v.*

---

**4.** It is true that in *Monarch Industrial Corp. v. American Motorists Insurance Company*, 276 F.Supp. 972, 981 (S.D.N.Y.1967), the court stated in dicta that where "there is a change of party, relation back to the time of filing the original complaint is precluded, unless the amendment is filed within the period provided by law for commencing the action against the new party." To the extent that that opinion can be read to preclude absolutely amendments alleging claims in a new capacity after the statute of limitations has run, I do not believe it accurately states the law.

**5.** In light of my disposition of Rockwood's Fed. R.Civ.P. 15(c) argument, I do not reach its contention that the six year statute of limitations for breach of contract actions is applicable. *See Cohen v. Goodfriend*, 665 F.Supp. 152 (E.D.N.Y. 1987); *Video Corp. of America v. Frederick Flatto Assoc.*, 58 N.Y.2d 1026, 462 N.Y.S.2d 439, 448 N.E.2d 1350 (1983); *Sears, Roebuck & Co. v. Enco Associates, Inc.*, 43 N.Y.2d 389, 396, 401 N.Y.S.2d 767, 771, 372 N.E.2d 555, 558 (1977).

**6.** In contrast under New York law, an accountant can be held liable to a third party for negligence if the accountant prepared a financial report for a particular purpose with the intention that a known party rely and if there is some conduct on the part of the accountant evincing

his understanding of the party's reliance on the report. *See William Iselin & Co. v. Mann Judd Landau*, 71 N.Y.2d 420, 527 N.Y.S.2d 176, 522 N.E.2d 21 (1988); *Credit Alliance Corp. v. Arthur Andersen & Co.*, 65 N.Y.2d 536, 493 N.Y.S.2d 435, 483 N.E.2d 110 (1985). Our Court of Appeals has characterized this as "a limited exception" to the rule in New York that "'professionals are not liable either in tort or contract absent privity.'" *Morse/Diesel, Inc. v. Trinity Industries, Inc.*, 859 F.2d 242, 247 (2d Cir.1988) (quoting *Widett v. U.S. Fidelity and Guar. Co.*, 815 F.2d 885, 886 (2d Cir.1987)). For example, it is settled law that an architect cannot be held liable in negligence absent a relationship of privity. *See Morse/Diesel, Inc. v. Trinity Industries, Inc.*, 859 F.2d 242 (2d Cir.1988); *Widett v. U.S. Fidelity and Guar. Co.*, 815 F.2d 885 (2d Cir.1987); *Ossining Union Free School District v. Anderson Larocca Anderson*, 135 A.D.2d 518, 521, 521 N.Y.S.2d 747, 750 (2d Dept.1987). Similarly, the Appellate Division has declined to apply *Credit Alliance* to engineers, remarking that "the courts have expressed a reluctance to extend liability under these circumstances, to other professionals." *Edward B. Fitzpatrick v. Suffolk County*, 138 A.D.2d 446, 525 N.Y.S.2d 863, 865 (2d Dept.1988).

*Lerner*, 125 A.D.2d at 664, 510 N.Y.S.2d 183 ("While ... the privity requirement has been relaxed in certain areas of professional malpractice, courts of this State have not departed from this requirement in legal malpractice cases."). *But see Vereins–Und Westbank, AG v. Carter*, 691 F.Supp. 704 (S.D.N.Y.1988) (privity not required). Under New York law, attorneys are not liable to the third party for negligent representations, even where they prepare documents knowing that third parties will rely upon them. Similarly, where attorneys engage in face to face negotiations with an adversarial party, New York courts have held that they do not have a duty of care to the third party even if that party with the attorney's knowledge relies on the attorney's representation.

In *Grassi v. Tatavito Homes, Inc.*, 90 A.D.2d 479, 454 N.Y.S.2d 471 (2d Dept. 1982), *aff'd*, 58 N.Y.2d 1038, 462 N.Y.S.2d 445, 448 N.E.2d 1356 (1983), the court held that the attorney for the seller in a transaction involving the sale of property could not be held liable to the buyer for his negligent misrepresentation that the seller owned the property and had title insurance. "Absent privity," the court stated, the attorney "is not liable for simple negligence." *Id.* 454 N.Y.S.2d at 472; *see also Madrasatul–Watania, Inc. v. Halperin*, 88 A.D.2d 503, 449 N.Y.S.2d 736, 737 (1st Dept.1982) ("In representing the seller, [attorney] is under no duty to explain the terms ... to the plaintiffs-buyers. The latter should have sought appropriate advice from their attorney...."); *Cronin v. Scott*, 78 A.D.2d 745, 432 N.Y.S.2d 656 (3d Dept.1980) (no duty to nonclient).

*Grassi, Madrasatul–Watania* and *Cronin* all involved oral statements made by the attorney in the course of a negotiation. The same rule applies to statements made in written form. Whereas the making of a statement in writing might increase the standard of care if a duty was owed, it should not of its own force create a duty to a third party where none would exist had the statement been made orally. In *National Westminster Bank U.S.A. v. Weksel*, 124 A.D.2d 144, 511 N.Y.S.2d 626 (1st

Dept.1987), the court held that attorneys for a corporation could not be held liable to a third-party bank for the negligent preparation of public filings which the attorneys knew would be sent to the bank by the corporation and relied upon by the bank in its lending decisions.

Recently, in *Council Commerce Corp. v. Schwartz, Sachs & Kamhi, P.C.*, App.Div., 534 N.Y.S.2d 1 (2d Dept.1988), the Appellate Division, Second Department held that attorneys could not be held liable in mere negligence for an opinion letter which they had signed and which was provided to an adverse party in a loan transaction. The court found that the letter was prepared by the defendants "in the course of representing their clients in the loan transactions." *Id.*, 534 N.Y.S.2d at 2. It thus reaffirmed that "the courts of [New York] have not departed from this requirement [of privity] in the area of attorneys' negligence where '[t]he firmly established rule ... is that absent fraud, collusion, malicious acts or other special circumstances, an attorney is not liable to third parties not in privity for harm caused by professional negligence.'" *Id.* (quoting *Viscardi v. Lerner*, 125 A.D.2d 662, 663–64, 510 N.Y.S.2d 183, 185 (2d Dept.1986)).

■ It does not follow, however, that a lawyer may be held liable in negligence only to those who pay her bills or with whom she has a formal retainer agreement. On a theory close to that of third-party beneficiary, New York courts have held attorneys liable for misrepresentations to third parties when the lawyer is directed by her client to prepare a document for and on behalf of a third party. *See Alpert v. Shea Gould Climenko & Casey*, N.Y.L.J., May 27, 1988 p. 23, col. 1 (Sup.Ct.). [1988 WL 90922] When the lawyer represents that she is acting on the third party's behalf, the attorney is estopped from denying the attorney-client relationship and may be held liable for breach of fiduciary duty or negligence. *See Cohen v. Goodfriend*, 665 F.Supp. 152, 158 (E.D.N.Y.1987); *Croce v. Kurnit*, 565 F.Supp. 884, 890 (S.D.N.Y.1982), *aff'd*, 737 F.2d 229 (2d Cir.1984); *Schwartz v. Green–*

*field, Stein & Weisinger,* 90 Misc.2d 882, 396 N.Y.S.2d 582 (Sup.Ct.1977).

In *Vereins-und Westbank, A.G. v. Carter,* 691 F.Supp. 704 (S.D.N.Y.1988), a case involving facts similar to this matter, Judge Knapp held that an attorney could be held liable to a non-client for negligent misrepresentations in an opinion letter. Although Judge Knapp based his ruling on his conclusion that the *Credit Alliance* rule for accountants (which is discussed in footnote 6, *supra*) applied to attorneys as well, there were facts, as Judge Knapp expressly recognized, 691 F.Supp. at 715–16, that could have justified the same ruling on a far narrower ground, to wit: the attorney's client had asked him to prepare the opinion for the third party, and the letter specifically stated that it could be relied upon by the third party.

In *Alpert v. Shea Gould Climenko & Casey,* the New York State Supreme Court held that an attorney could be held liable on a theory of breach of fiduciary duty for negligent misrepresentations contained in an opinion letter where "the purpose of a legal opinion is to advise [the plaintiffs] and to effect their reliance on such advise." There are decisions in other states holding that lawyers can be held liable to the addressees of their opinion letters. *See Greycas, Inc. v. Proud,* 826 F.2d 1560 (7th Cir. 1987) (attorney liable under Illinois law for opinion letter addressed to plaintiff and prepared pursuant to the terms of a loan agreement), *cert. denied,* —— U.S. ——, 108 S.Ct. 775, 98 L.Ed.2d 862 (1988); *Haberman v. Public Power Supply System,* 109 Wash.2d 107, 744 P.2d 1032, 1067–68 (1987). *Compare First Municipal Leasing Corp. v. Blankenship, Potts, Aikman, Hagin & Stewart,* 648 S.W.2d 410 (Tex. App.1983) (attorney not liable for opinion letter which she knew would be given to a third party but which was addressed to client).

■ When a lawyer at the direction of her client prepares an opinion letter which is addressed to the third party or which expressly invites the third party's reliance she engages in a form of limited represen-

tation. *See* 1 G. Hazard & W. Hodes, *The Law of Lawyering* 320 (1987). Although the attorney is paid by and represents her client, in the opinion letter she expressly states (with her client's consent) that she is rendering a legal service to the third party. Commentators have agreed that the attorney owes a duty to the third party if the opinion letter is either addressed to the third party or expressly authorizes his reliance. *See* Fuld, *Lawyers' Standards and Responsibilities in Rendering Opinions,* 33 Bus.Law. 1295, 1309 (1978) ("To whom does the opining lawyer owe duties? It is clear that he has an obligation to his client, and if the lawyer addressed his opinion to a third party, he has duties to the third party."); Jennings, *The Corporate Lawyers' Responsibilities and Liabilities in Pending Legal Opinions,* 30 Bus.Law. 73, 77 (1975) ("When rendering opinions for the use of third persons, the lawyer likewise should assume an independent posture."); Note, *Attorney Liability to Third Parties for Corporate Opinion Letters,* 64 B.U.L. Rev. 415 (1984) (favoring imposition of liability on third-party beneficiary theory); *cf. Croce v. Kurnit,* 565 F.Supp. 884, 890 (S.D. N.Y.1982), *aff'd,* 737 F.2d 229 (2d Cir.1984) (imposing liability where third party is led to believe attorney is acting on its behalf).

The Second Department's decision in *Council Commerce Corp.* is not to the contrary. Although the court dismissed the third party's suit based on the defendant-attorney's negligent opinion letter prepared to give comfort to the third party, there was no indication that the letter either was addressed to the third party or invited his reliance.

■ The imposition of liability in such circumstances would not conflict with the reasons for limiting the attorney's exposure in other cases. The limitation is based in part on the concern that imposition of a duty of care to adverse third parties might interfere with the client's right to confidentiality, giving the adverse party a weapon with which to pierce attorney-client confidences,[7] and might detract from the attor-

---

**7.** *See* Model Rules of Professional Conduct Rule 1.6(b)(2) (attorney may reveal confidences to

ney's incentive to represent clients zealously. Model Code of Professional Responsibility canon 7; *see Duttle v. Bandler & Kass,* No. 82 Civ. 5084(PNL), slip op. at 37 (S.D.N.Y. Sept. 23, 1988); *Crossland Savings FSB v. Rockwood Insurance Co.,* 692 F.Supp. 1510, 1513 (S.D.N.Y.1988).[8] Furthermore in the absence of informed consent by the client, the attorney cannot properly assume a duty to another party in the transaction. Model Rules of Professional Conduct 1.7(b).

■ As to loss of confidentiality, where the opinion letter is addressed to the third party at the direction of the client, any resulting loss of confidentiality is as a result of the client's own decision and not that of the attorney. The sacrifice of confidentiality is the consequence of the client's choice. *See Vereins-und Westbank, AG v. Carter,* 691 F.Supp. 704 (S.D.N.Y.1988) ("Since Carter, for his own business purposes, directed his attorney to make representations to Vereins and Rockwood, he must be deemed to have waived any claim of confidentiality as to information necessary to determine the trust or falsity of such representations"). As to zealous representation, the rendering of an opinion to a third party at the client's direction for the advancement of the client's interests does not detract in any way from the attorney's loyalty to her client; she is serving her client's interest by rendering the opinion. That the risk of liability may induce caution is not inappropriate. The rendering of a legal opinion is a service of the attorney's duties as to which judgment is expected to prevail over zeal. Finally, as to the ethical prohibition on the attorney's representation of an adverse party, that prohibition is not present where the client recognizes the potential conflict and nonetheless directs the attorney to furnish the opinion to the adverse party.

■ Rockwood has produced sufficient evidence to withstand the motion for summary judgment based upon these standards. Although it appears that Carter hired Barsalou, there is a genuine issue of fact as to whether Barsalou, at its client's direction, executed the opinion letter for the benefit of IDL and its assignees. Barsalou has testified that the opinion letter was prepared for IDL and its assignee at Carter's direction and request. The letter specifically states that it may be relied upon by IDL and its assignee.

There is no merit to Barsalou's argument that it cannot have breached a duty of care to Crossland because it did not know of Crossland's existence. The opinion letter specifically adverted to IDL's assignee; the fact that Barsalou did not know Crossland in particular would be the assignee is immaterial. *See Vereins-und Westbank, A.G. v. Carter,* 691 F.Supp. 704 (S.D.N.Y. 1988) (duty extends to addressee of opinion letter and assignee whose reliance was invited, even if actual identity of assignee has not been established at the time the letter was written); F. Harper, F. James, & O. Gray, *The Law of Torts* § 7.6, at 411–12 (2d ed. 1986) ("where defendant's purpose is to influence action on the part of a particular group of persons, the fact that a member of the group who does so act is not known by name to a defendant should not shield him from liability for negligence"). It is black letter law that a third-party beneficiary need not be "identified or even identifiable at the time of the making of a contract." *Associated Teachers of Huntington, Inc. v. Board of Education, Union Free School,* 33 N.Y.2d 229, 234, 351 N.Y. S.2d 670, 674, 306 N.E.2d 791 (1973); *accord Airco Alloys Div. v. Niagara Mohawk Power Co.,* 76 A.D.2d 68, 79, 430 N.Y.S.2d 179, 186 (4th Dept.1980).

defend himself from a civil charge based upon conduct in which the client was involved).

**8.** *See also Pelham v. Griesheimer,* 92 Ill.2d 13, 64 Ill.Dec. 544, 547, 440 N.E.2d 96, 99 (1982) ("In the area of legal malpractice the attorney's obligations to his client must remain paramount"); *Needham v. Hamilton,* 459 A.2d 1060, 1061 (D.C.

App.1983) ("This denial of liability to anyone not in privity of contract is premised primarily upon two concerns: (1) that to allow such liability would deprive parties to the contract of control of their agreement; and (2) that a duty to the general public would impose a duty of liability on the contracting parties.").

I therefore hold that Rockwood has stated a cause of action to recover for negligence and attorney malpractice as subrogee of Crossland.

## CONCLUSION

Third-party defendant Barsalou's motion for summary judgment is denied.

SO ORDERED.