GUINNESS MAHON CAYMAN TRUST, LTD., as Trustee of the Lynbrett Trust, Plaintiff,

v.

WINDELS, MARX, DAVIES & IVES, a partnership, and Mitchell A. Gilbert, Defendants/Third–Party Plaintiffs,

v.

E. Miles PRENTICE, III and Shanley & Fisher, a partnership, Third–Party Defendants.

No. 86 Civ. 2414 (GLG).

United States District Court, S.D. New York.

April 20, 1988.

Smith, Steibel, Alexander & Saskor, P.C., New York City by Ludwig A. Saskor, of counsel, Beus, Gilbert, Wake & Morrill,

Phoenix, Ariz., by Alfred W. Ricciardi, Phillip D. Ferris, of counsel, for plaintiff.

Windels, Marx, Davies & Ives, New York City by Raymond T. Munsell, Arthur E. Hoffmann, Jr., of counsel, for defendants/third-party plaintiffs.

Brown & Wood, New York City by Roger J. Hawke, of counsel, for third-party defendant E. Miles Prentice, III.

Wilson, Elser, Moskowitz, Edelman & Dicker, New York City by John W. Manning, of counsel, for third-party defendant Shanley & Fisher.

GOETTEL, District Judge:

This is a rather unusual action in which a borrower sues a bank's law firm for, *inter alia*, legal malpractice. The Allied Irish Bank ("the Bank") moves to intervene as a defendant and counterclaimant in the action. The defendant attorneys (Windels, Marx, Davis & Ives and one of its partners, Mitchell A. Gilbert) move for summary judgment on grounds that they owed no obligations to the borrower. The plaintiff moves to serve a second amended complaint.

## I. FACTS

Briefly stated, the facts giving rise to this unusual situation are as follows. The plaintiff, Guinness Mahon Cayman Trust, Ltd. ("Guinness Mahon" or the "trustee"), is a Cayman Island trustee for the Lynbrette Trust ("Lynbrette" or the "Trust"), also a Cayman entity.[1] The beneficiaries are Irish citizens. Lynbrette approached the Allied Irish Bank (an Irish bank having a New York office) concerning a large loan ($2,775,000) it wished to obtain, which in turn it intended to lend to an Arizona real estate developer known as Roadhaven. The second transaction was to be at a higher rate of interest and would thus produce profit for the Trust. The Bank agreed to

loan Lynbrette the money, providing that the security which the Trust was to obtain on certain Arizona property owned by Roadhaven would be assigned to the Bank and that the individual beneficiaries of the Trust would guarantee the loan. At least a portion of these funds were distributed to the Arizona company prior to its providing any form of security. Substantial difficulties were thereafter experienced in attempting to obtain adequate security from Roadhaven. Certain deeds of trust were ultimately obtained (as described hereafter), but when Roadhaven bankrupted it appeared that the security position of the Trust and the Bank were junior to other interests, with the result that the entire loan may be lost.

Apparently, the interest in the Arizona project was the sole asset of the Lynbrette Trust. The Bank, therefore, attempted to collect from the individual guarantors, the Irish beneficiaries of the Trust. To preempt that, the trustee, Guinness Mahon, commenced two suits—this one against the Bank's attorneys and a second suit shortly thereafter against the Bank.[2] The Bank, not surprisingly, counterclaimed for the sums owed to it. Both suits originally were filed in New York State court. The defendants in this suit, the New York law firm and one of its partners (the Bank's attorneys at all times pertinent to this action), removed this action to Federal court on grounds of diversity.[3] The basis for the removal by the New York defendants is unclear considering the requirement that diversity removal is available "only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b) (1982). Plaintiff, however, did not challenge the removal, and may now have waived its right to do so. *See Woodward v. D.H. Overmyer Co.*, 428 F.2d

---

1. The spelling "Lynbrette" is provided by the second amended complaint. The original complaint and, thus, the caption for this decision provided the spelling "Lynbrett."

2. The trustee has never explained why it chose to commence two separate actions or why it filed the more limited one against the attorneys before it filed the broader action against the

bank seeking the same relief and damages. Clearly, the two cases could have been filed as a single action, particularly because of the relationship between the two sets of defendants (attorney and client).

3. Removal of the other action is not possible because all parties to it are aliens.

880, 882–83 (2d Cir.1970), *cert. denied,* 400 U.S. 993, 91 S.Ct. 460, 27 L.Ed.2d 441 (1971) (holding plaintiff waives right to remand where no timely request for remand made); *Chevrier v. Metropolitan Opera Ass'n,* 113 F.Supp. 109, 110 (S.D.N.Y.1953) (holding plaintiff waived right to remand by affirmative acts indicating recognition and acceptance of federal jurisdiction). The pending state court action has not proceeded rapidly, although the discovery conducted between the parties has been available in both actions.

The theory of the plaintiff's malpractice claim against the Bank's attorneys results from the following. The Trust and its attorneys had been unsuccessful in obtaining the desired mortgages from Roadhaven. This resulted in part from the fact that Roadhaven was already involved in a number of transactions as to which security interests already had been granted. The Bank understandably became impatient over the Trust's failure to obtain security from Roadhaven. Consequently, the Bank advised its own attorneys to obtain Arizona counsel and pursue the matter. Ultimately, the Bank's attorneys, with assistance of local counsel, procured a deed in trust (the equivalent of a mortgage) on California property owned by Roadhaven and, later, a deed in trust on the Arizona property as to which the loan had been made. Both of these deeds in trust were for the benefit of the Lynbrette Trust. The Bank had the Trust assign these interests to it. Both mortgages were subordinate to earlier loans, and the Arizona deed in trust was initially filed in the wrong county by local counsel. By the time it had been refiled, a substantial lien that would have otherwise been junior to the deed in trust had been filed.

The Bank and its attorneys were aware of these problems. There is a factual dispute as to the extent to which either of them advised the Trust or its attorneys about these problems. They did provide the Trust with copies of the deeds in trust, however. The fact that the Arizona deed

in trust had initially been filed in the wrong county, as well as the existence of senior liens, was apparent from the face of the documents. There also appears to be some doubt that any better security could have been obtained at that point even absent the mistake in filing, which caused a junior lien to become senior. As to the senior lien, there is a question as to whether that additional senior lien is what will prevent the Trust from recovering in the bankruptcy proceeding.

The plaintiff essentially makes two claims against the attorneys, although a variety of legal theories are employed. The first is that the Bank's attorneys became, in effect, the Trust's attorneys for purposes of obtaining the security, and that the attorneys are guilty of malpractice for the manner in which they carried out their assignment. The second claim is that, even if the Bank's attorneys could not be considered the Trust's attorneys, they had an obligation to fully advise the Trust of the adverse developments. This failure, plaintiff contends, became material because later the Trust had the opportunity to be repaid by Roadhaven on the loan and to withdraw from the project. Needless to say, plaintiff argues that the Trust would have done so had it been apprised of the deficiencies in the security. Although we entertain some doubts as to the likelihood that Roadhaven would have retired such a large loan considering its subsequent bankruptcy, for purposes of the pending motions we assume that full repayment was promised.[4]

## II. DISCUSSION

### a. *The Defendants' Motion for Summary Judgment*

Although the Bank's motion to intervene was filed before the defendant attorneys' motion for summary judgment, intervention would be impossible if the action no longer existed. Consequently, we will deal with the defendants' motion for summary judgment first.

---

**4.** We note that the second amended complaint seems to suggest that only about one-third of that loan was actually advanced to Roadhaven.

Consequently, Roadhaven's outstanding obligation may not be as large as the court originally assumed.

With respect to events involved in obtaining the deeds of trust, and the extent of disclosures between the parties, a large mass of evidence has been submitted by the parties. Some of the evidence, and particularly the conclusions to be drawn therefrom, is in dispute. Fed.R.Civ.P. 56(c) provides that summary judgment is appropriate if "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The burden is on the moving party to demonstrate the absence of a material, factual dispute. Fed.R.Civ.P. 56(e); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). In addition, in determining whether that burden is met, the court must draw all reasonable inferences and resolve all ambiguities in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) (per curiam).

For years it was commonly believed that the Second Circuit's predilection toward reversal of summary judgment decisions had effectively buried Rule 56. A combination of outcries from the local bar and a troika of Supreme Court decisions on the subject[5] led to a brief revival of the procedure's usefulness. In *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir.1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987), the Second Circuit dismissed reports of the rule's death as both premature and grossly exaggerated. The post-*Knight* embrace of Rule 56, however, appears to be somewhat ambivalent. In *Apex Oil Co. v. DiMauro*, 822 F.2d 246, 252 (2d Cir.), *cert. denied*, —— U.S. ——, 108 S.Ct. 489, 98 L.Ed.2d 487 (1987), the court conceded "that while summary judgment is a valuable means for avoiding unnecessary trials, ... it should not be regarded as a substitute for trial." Just five months after *Apex Oil* was decided, and only thirteen months after the court ostensibly sought in *Knight* to definitively put to rest rumors of the rule's demise, the court reversed summary judgment in a civil

rights case and took the opportunity to decry "the frequency of cases in which [summary judgment] is granted improvidently...." *Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 57 (2d Cir.1987). Against this backdrop, we turn to the questions raised by the motion at bar.

■ After resolving disputed factual matters in plaintiff's favor, we find that, by pursuing the interests of their client (the senior lender), the defendants did not become the *de facto* attorneys for the Trust (the borrower-junior lender) and, therefore, cannot be sued by plaintiff for legal malpractice. It is true that, vis-a-vis Roadhaven, the interests of the Bank and the Trust were congruent. It is also true that for many of these services, the Trust as borrower had to pay the fees of the Bank's attorneys. Further, it appears that the Trust and its attorneys ceased their efforts to obtain the desired security from Roadhaven when they saw that the Bank's attorneys were actively pursuing that matter. We do not believe, however, that any of these circumstances create an attorney-client relationship between the Bank's lawyers and the Bank's customer, the Trust. *See Quintel Corp. N.V. v. Citibank, N.A.*, 589 F.Supp. 1235, 1239–40 (S.D.N.Y.1984) (noting payment of legal fees does not, ipso facto, establish attorney-client relationship); *National Westminster Bank USA v. Weksel*, 124 A.D.2d 144, 511 N.Y.S.2d 626, 628 (1st Dep't), *appeal denied*, 70 N.Y.2d 604, —— N.Y.S.2d ——, 513 N.E.2d 1307 (1987) (holding that, absent contractual privity, attorney generally not liable to third party).

■ As to the claimed failure to reveal adverse developments to the Trust and its lawyers, the issue is much closer. New York law allows a third party—the same third party who, because he or she is not a client, cannot maintain a malpractice action against the attorney in question—to assert claims arising from the fraud, collusion, or

<hr>

5. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

tortious or malicious acts of the attorney. *Quintel Corp.,* 589 F.Supp. at 1240; *Michalic v. Klat,* 128 A.D.2d 505, 512 N.Y.S. 2d 436, 438 (2d Dep't 1987); *Singer v. Whitman & Ransom,* 83 A.D.2d 862, 442 N.Y.S.2d 26, 27 (2d Dep't 1981). Such liability may also be premised upon the existence of a quasi-attorney-client fiduciary relationship. *Croce v. Kurnit,* 565 F.Supp. 884, 890 (S.D.N.Y.1982), *aff'd,* 737 F.2d 229 (2d Cir.1984); *Penato v. George,* 52 A.D.2d 939, 383 N.Y.S.2d 900, 904–05 (2d Dep't 1976), *appeal dismissed,* 42 N.Y.2d 908, 397 N.Y.S.2d 1004, 366 N.E.2d 1358 (1977).

As indicated above, summary judgment has regained some usefulness in this circuit, but its applications must still be guarded. Although we doubt that the plaintiff is likely to prevail on the factual issues involved,[6] we cannot say that there are no material facts at issue or that there are no reasonable circumstances under which plaintiff could legally prevail on the issues of fraud or breach of fiduciary duties.

Consequently, the motion for summary judgment is granted as to those claims essentially involving malpractice, and is denied as to the remaining claims which essentially raise questions of fraudulent conduct or a breach of fiduciary duty. Holding as we do, *infra,* that a second amended complaint may be filed, this decision means that claims 1, 5, and 6, as set forth in that complaint, will be disallowed.

### b. The Bank's Motion to Intervene

Having denied defendants' motion for summary judgment (in part), we turn to the application of the Bank to intervene. This motion is a clear case of the tail wagging the dog. The more customary order of things would have been for the Bank to have sued the Trust and the guarantors and for those parties to assert defensively the claimed deficiencies of the Bank and its attorneys. The state court proceeding now embodies those issues, although the position of the parties is reversed.

Fed.R.Civ.P. 24(a)(2) allows intervention of right, upon timely application,

when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Thus, to intervene as of right an applicant must demonstrate: (1) an interest in the subject matter of the action; (2) that the disposition of the action may, as a practical matter, impair that interest; (3) that the interest is not adequately represented by the existing parties; and (4) that the application is timely. Given the salutary purposes of the rule, "its components [should] be read not discretely, but together." *United States v. Hooker Chemicals & Plastics Corp.,* 749 F.2d 968, 983 (2d Cir.1984).

Taking the last of those considerations first, this application was not made in a timely fashion. Fourteen months elapsed after the Bank asserted its counterclaims in the state court action and before this motion was filed.[7] We would be disinclined, however, consistent with the broad reading of the rule directed by *Hooker,* to deny the motion simply because of untimeliness.

The other three factors are quite interwoven. If the scope of this action is viewed narrowly, the Bank's interests in the litigation are identical to those of its attorneys. Both seek to establish that the attorneys were not acting on the Trust's behalf in obtaining the security interest, that they did not make any material mistakes, and that, if they did, those mistakes did not damage the Trust. Needless to

---

**6.** We note that in plaintiff's brief in support of the motion for leave to amend the complaint counsel states, at page 4, that Roadhaven "expressed the desire to repay all loans made by the bank. Roadhaven failed, however, to make good on its promise."

**7.** The bank gives as its reason for not moving earlier that it did not contemplate that the calendar in state court would be as slow as it has been. It is not a function of the federal courts to provide a speedier alternative to the state system.

say, the attorneys (who are representing themselves) have been conducting a vigorous defense of their behavior. They have at stake not only money damages but also their professional reputation.

The Bank argues that the attorneys have no interest in the loan agreement and recovering the loans made to the Trust. That clearly is true, but it is an issue that need not be reached in this litigation. Whether the Bank can collect from the Trust on its loan is a much broader issue; the attorneys' responsibility is only a subpart of that larger question. The activities of the attorneys which are alleged to have been fraudulent occurred more than a year after the loan agreement was executed. Consequently, the Bank has no direct or significantly protectable interest in this more limited litigation which would require intervention as of right. *See Restor–A–Dent Dental Laboratories, Inc. v. Certified Alloy Products, Inc.,* 725 F.2d 871, 874 (2d Cir.1984) (setting forth guidelines for determining what constitutes an "interest" for purposes of intervenor). Having said that, however, we cannot with any assurance say that the ultimate resolution of this action might not have some collateral estoppel effect in the state court action.

There are other problems involved in the proposed intervention. The Bank wishes not only to intervene but to serve a counterclaim against the Trust and its five Irish beneficiaries who were guarantors of the loan. By suing the Bank in state court, the alien plaintiff has conferred jurisdiction over the counterclaims in that action. It does not follow, however, that plaintiff has subjected itself to liability in this suit. It would appear that there is no basis for personal jurisdiction over the Irish beneficiaries since they all live and work in Ireland and most or all of their guaranties were executed in Ireland.

Another troubling aspect of the motion to intervene is that all of the claims being asserted by the Bank will be identical to those asserted in the existing state court action. Intervention, therefore, would lead to an inevitable and undesirable duplication of effort, draining limited court resources. This court has previously made clear that such a circumstance should be avoided if at all possible. *Daugherty v. Popick,* 89 F.R.D. 642, 643–44 (S.D.N.Y.1981). *See also Burton v. Exxon Corp.,* 536 F.Supp. 617, 623 (S.D.N.Y.1982) (suggesting principles of comity may require abstention when state court proceeding commenced first).[8] The discovery in the state action has been coextensive in most respects with this action, but in some respects it has been broader since the parties to the state action have been allowed to serve one hundred interrogatories.[9] Rather than the Bank seeking to intervene in this proceeding to deal with its interests and avoid a possibly adverse ruling against its attorneys, the appropriate approach would seem to be to have the state court action tried to a conclusion.[10]

Added to these issues, we note that the dispute between the Bank and the Trust could not have been adjudicated in this court since, because all parties to such an action would be aliens, there would not be diversity jurisdiction. The net effect, therefore, of allowing intervention at this time would be the backdoor entry of a suit between foreign parties through complex procedural maneuvering. If the Bank were allowed to intervene, the court would be hearing its case under the doctrine of ancillary jurisdiction. The decision to entertain ancillary claims is within the discre-

---

**8.** As mentioned *supra* note 2, this action, of the two, was actually commenced first. When viewed in the light of the subsequent removal and much later motion by the Bank to intervene, however, there can be no doubt that, as to the Bank, the pending state action commenced "first."

**9.** The local rules of this court would have prevented the filing of most of those interrogatories at that stage of the litigation since they are apparently contention interrogatories. S.D.N.Y. Civ.R. 46.

**10.** The attorneys could, of course, have been named as defendants in that action, or been impleaded as third party defendants, a course which is perhaps still open.

tion of the district court. *Dahlberg v. Becker*, 581 F.Supp. 855, 865 (N.D.N.Y.) (Miner, J.), *aff'd* 748 F.2d 85 (2d Cir.1984), *cert. denied*, 470 U.S. 1084, 105 S.Ct. 1845, 85 L.Ed.2d 144 (1985). Given the pernicious "backdoor effect," we think such an exercise would be improvident.

In light of all of the above, we deny the Bank's motion to intervene.

■ Notwithstanding that denial, we remain troubled by the fact that, because the federal tail may wag more quickly than the state dog, these matters are not proceeding in an orderly manner. The issues in the state litigation are far broader than those presented in this action. Moreover, if the action of the Bank's attorneys gives rise to a cause of action against them, it would also seem to provide a defense to the Trust against the Bank's claims in the state litigation and to support any damages they may successfully assert therein. Clearly, the state action should be tried first. In all likelihood, it would render moot this action. Where the disposition of a state court action can render a federal court action moot, postponement of adjudication of the federal claims is warranted. *Mack v. Varelas*, 835 F.2d 995, 999–1000 (2d Cir.1987). *See also Universal Gypsum of Georgia v. American Cyanamid Co.*, 390 F.Supp. 824 (S.D. N.Y.1975) (Judge Cannella's scholarly opinion outlining authority and imperative underlying district court's decision to stay proceedings pending outcome of corollary state action). Consequently, although we are denying the motion to intervene, we will not place this case upon our trial calendar until the state court action between the Bank and the Trust has been tried.

### c. The Plaintiff's Motion to Amend the Complaint

■ The plaintiff moves to file a second amended complaint. This complaint would add a couple of causes of action and make E. Miles Prentice, III, presently a third-party defendant, a direct defendant. Under federal procedures, motions to amend are liberally granted. Generally only undue delay, bad faith, dilatory motives, or undue prejudice to the opposing party can be asserted to prevent an amendment prior to trial. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). Unless there is good reason to deny a motion to amend, a failure to grant it is an abuse of discretion.

The defendants argue strenuously that amendment should not be allowed because it has been filed simply to avoid their summary judgment motion. Having denied that latter motion in part, this no longer is a basis for refusing the amendment. Defendants and the Bank claim that the amendment is being put forth solely to delay trial of this action. Since we have decided to defer trial of this action until the state court action has been tried, that, too, is no longer a consideration.

■ The plaintiff contends that it could not have made these amendments earlier since the information on which the motion is based became available to it only through discovery of documents and depositions. Defendants deny this. We cannot determine the merits of that dispute. The proposed second amendment, like so many federal pleadings submitted by New York practitioners, stands in stark violation of Fed.R.Civ.P. 8, which calls for a short and plain statement of the claim. The second amended complaint is 28 pages and 132 paragraphs long. Be that as it may, under federal notice pleading, the existing complaint is probably adequate to support the new theories put forth in the second amended complaint.

With respect to Prentice's transition from third-party defendant to defendant, he suffers no prejudice thereby and no additional discovery is necessitated. Prentice was a partner at Windels Marx. He is now a partner in the law firm of Brown & Wood. Brown & Wood has been representing him in this action, as well as representing the Bank in the state court action. Under these circumstances, the motion to amend the complaint for a second time is granted although, consistent with our earlier decision on defendants' motion for summary judgment, claims 1, 5, and 6 of the second amended complaint (those dealing

with the essential malpractice claim) are disallowed.

### Conclusion

Under all of these circumstances, this court grants the defendants' motion for summary judgment as to those claims essentially comprising the malpractice charge (claims 1, 5, and 6 of the second amended complaint), but denies that motion as to the alleged breach of fiduciary duties. We also deny the Bank's motion to intervene, and grant the plaintiff's motion to amend the complaint (consistent with our disposition of the summary judgment motion). We will not place this case on the trial calendar until such time as the state court action has been tried between the Bank and the Trust.

SO ORDERED.