Khadijah SHARIF, by her mother and next friend, Amida SALAHUDDIN, et al., individually and on behalf of all others similarly situated, Plaintiffs,

v.

NEW YORK STATE EDUCATION DE-PARTMENT; and Thomas Sobol, Commissioner of Education, in his official capacity, Defendants.

No. 88 Civ. 8435 (JMW).

United States District Court,
S.D. New York.

March 20, 1989.

**366**

Richard Hamburger, Block, Amelkin & Hamburger, Smithtown, N.Y., for proposed intervenor.

Isabelle Katz Pinzler, Kary L. Moss, Deborah A. Ellis, Joan E. Bertin, Women's Rights Project, American Civ. Liberties Union, Robert M. Levy, New York Civ. Liberties Union, Vivienne W. Nearing, Robert Lewin, Madelaine R. Berg, Lisa Rosenthal, Regan A. Shulman, Strook, Strook & Lavin, (Helen Hershkoff, John A. Powell, American Civil Liberties Union, of counsel), New York City, for plaintiffs.

Marion R. Buchbinder, Asst. Atty. Gen., Robert Abrams, Atty. Gen., State of N.Y., New York City, for defendants.

## MEMORANDUM AND ORDER

WALKER, District Judge:

Petitioner Board of Education of Hewlett–Woodmere Union Free School District ("the District"), in its capacity and on behalf of its students, renews its application for permission to intervene in the remedy stage of this action as of right pursuant to F. Rule Civ.P. 24(a), or alternatively, for permission to intervene pursuant to Rule 24(b). This Court denied the District's previous intervention motion on January 23, 1989, without prejudice. For the reasons stated below, petitioner's motion is denied.

### I. *Background: Prior Proceedings*

In November, 1988, plaintiffs—ten high school students and two organizational plaintiffs—brought an action for declaratory and injunctive relief against the State Education Department ("SED") and Commissioner of Education Thomas Sobol alleging that New York's exclusive reliance on the SAT to award Empire and Regents scholarships discriminates against female students in violation of the equal protection clause of the Fourteenth Amendment to the U.S. Constitution, Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681 *et seq.*, and the regulations pursuant to Title IX, 34 CFR Part 106.

On December 21, 1988, plaintiffs filed an order to show cause as to why this Court should not issue a preliminary injunction enjoining the SED's practice of exclusive reliance on SAT scores in awarding Regents and Empire scholarships. The narrow issue before the Court was whether *sole reliance* upon SAT scores *to award past academic achievement in high school* violates either the equal protection clause of the U.S. Constitution or the civil rights statutes prohibiting discrimination in federally-funded educational programs. The issue of whether SAT scores—alone or in combination with additional factors—accurately predict *future* success in college was not before the Court.

After receiving extensive submissions from the parties, the Court held a full day evidentiary hearing on January 23, 1989, in which the Court heard the testimony of educational testing experts, college deans of admission, and State Education Department Administrators. In essence, the Court found that the scholarships at issue were intended by the legislature to reward past high school achievement, not to predict future college performance. While the SAT's were designed for the latter, the state was utilizing them as the sole criterion for the former—a use which had never been professionally validated. The SED's practice had a disproportionate impact upon females since female scholarship applicants, for whatever reason, tend to have poorer SAT scores.[1]

1. *See* Opinion and Order, *Khadijah Sharif et al.* *v. New York State Education Dept. and Thomas*

Based upon the highly particularized facts of this case, on February 3, 1989, the Court found that "defendants' practice of relying solely upon SAT scores in awarding Regents and Empire Scholarships deprives young women of the opportunity to compete equally for these prestigious scholarships in violation of both Title IX and the Constitution's equal protection clause." Opinion at 42–43. Accordingly, the Court ordered defendants "to discontinue such discriminatory practices and, instead, to award Regents and Empire scholarships in a manner that more accurately measures students' high school achievement." Opinion at 43. While the Court noted that "[f]or the present year, the best available alternative is a combination of grades and SATs," the Court did "not limit the SED's discretion to develop other alternatives in the future, including a statewide achievement test." *Id.* Since this Court's February 3 order was preliminary in nature, this case is still before the Court on plaintiff's request for declaratory and permanent injunctive relief.

In an effort to comply with this Court's February 3 order, the SED determined that 1989 scholarship awards are to be based upon an equally-weighted combination of SAT scores and grade point averages. Ex. A., H.Aff.[2] To attain as much comparability as possible among grades reported by

*Sobol,* 709 F.Supp. 345 (S.D.N.Y.1989) and the schedule attached thereto.

**2.** Reference is to Exhibit A, Hamburger Affidavit dated February 23, 1989 (memorandum from Lionel R. Meno, Deputy Commissioner for Elementary and Secondary Education, dated February 8, 1989).

**3.** The requirements may be summarized as follows:

(1) Grades are to be reported in accordance with local board policies. If weighted grades are reported, schools are to submit a description of how the weights were assigned.

(2) Grade point averages are to be based solely upon the following courses: three units of English; three units of social studies; two units of science; two units of mathematics.

(3) Grade point averages are to be reported on a scale of 0–100. (A specific methodology for converting grades was provided to educators).

schools, the SED developed specific requirements for reporting grades.[3]

The District contends that it will receive fewer scholarships under the SED's new policy because the SED still allows schools to report weighted grades. H.Aff. ¶ 5–6. The District thus requests permission to intervene, arguing that:

(a) For the current 1988–89 academic year, SED should be directed to reject weighted grades submitted by any school district where the grades have been weighted pursuant to a policy that weights grades solely for purposes of the scholarship competitions or weights grades pursuant to a policy enacted solely in response to the requirement ... that scholarships be awarded pursuant to a formula which includes GPAs;

(b) SED should be directed to have ready for use in the 1989–90 academic year its planned Regents Scholarship examination so that the use of grades, and all the attendant inequities, will then be rendered moot.

H.Aff. ¶ 11. Both plaintiffs and defendants oppose the District's motion. For the reasons stated below, petitioner's motion to intervene is denied.

## II. *Discussion*

■ Under Fed.R.Civ.P. 24(a)(2),[4] applicants may intervene as of right if they demonstrate:

(4) Principals are to submit an affidavit attesting to the reported grades' validity, a copy of the school's approved grading policy, and a statement which explains any deviation in grading policy this year as contrasted to the last two school years.

(5) A random sample of schools are to submit grade documentation upon request.

**4.** Rule 24(a)—*Intervention as of Right.* Upon timely application anyone shall be permitted to intervene in an action:

. . . . .

(2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

(1) an interest in the subject matter of the action; (2) that the disposition of the action may, as a practical matter, impair that interest; (3) that the interest is not adequately represented by the existing parties; and (4) that the application is timely.

*Guiness Mahon Cayman Tr. v. Windels, Marx et al.*, 684 F.Supp. 375, 379 (S.D.N.Y. 1988). An intervenor's interest must be "direct, as opposed to remote or contingent." *Restor–A–Dent Dental Laboratories, Inc. v. Certified Alloy Products, Inc.*, 725 F.2d 871, 874 (2d Cir.1984). *See also Drew Ameroid Intern. v. M/V Green Star*, 681 F.Supp. 1056, 1058 (S.D.N.Y. 1988). Although the application is arguably timely, petitioners can neither claim a direct "interest" related to the subject matter of this action nor inadequate representation by existing plaintiffs.

First, intervention is improper because petitioner's interest, as set forth in its affidavits, is not directly related to the subject matter of this action. This action concerns the narrow issue of whether New York State's sole reliance upon SAT scores in granting state merit scholarships to be awarded on the basis of high school achievement discriminates against female students in violation of the U.S. Constitution and Title IX of the Education Amendments of 1972. This Court's analysis is confined to the particular facts of this case. The Court has not determined that educators' use of SAT scores is invalid in other circumstances and is not requested to do so. Rather, the Court's focus is upon whether the SED's reliance upon SAT's is invalid for the purpose of awarding merit scholarships which are designed to recognize past academic achievement in high school. Similarly, it is not the Court's province to assume the role of an educator and design alternative practices for awarding the scholarships in question.

The issues raised by the District in the instant motion implicate only the remedy stage of this litigation. The District does not suggest that its concerns are relevant to the underlying subject of this litigation, which rests primarily upon plaintiff's contention that the SED's exclusive use of SAT scores to award state merit scholarships has had a disproportionate impact upon young women. Denying a motion to intervene in a similar situation, Judge Sweet of this court stated:

> In essence, the movants seem to be asserting that they would be uniquely affected by any remedial relief which might be afforded to the plaintiffs. However, a court is under an affirmative duty to consider such interests when assessing the propriety either of the proposed settlements or proposed remedies. (citations omitted). These considerations can be accomplished without the intervention of a group having no particular legal claims to assert.

*Cook v. Pan American World Airways, Inc.*, 636 F.Supp. 693, 695–696 (S.D.N.Y. 1986). Thus, because the District has not presented a "direct" interest related to the subject matter of this action, it does not have a right to intervene under Rule 24(a)(2).

Intervention also is inappropriate under Rule 24(a)(2) because plaintiffs are able to adequately represent petitioners' interests. The Second Circuit has recently held that a party's ability to represent another turns on whether "[that] party has demonstrated sufficient motivation to litigate vigorously and to present all colorable contentions." *Natural Resources Defense Council, Inc. v. New York State Dept. of Environmental Conservation*, 834 F.2d 60, 62 (2d Cir. 1987). The District has made no allegation that plaintiffs cannot do so here. There is no indication that petitioner would add any necessary element to this case which would not be addressed by an existing party. *See Cook*, 636 F.Supp. at 698. Indeed, both plaintiffs and defendants have expressed nearly identical concerns relating to grade weighing. The District thus is not entitled to intervention as a matter of right.

■ Petitioner similarly does not have the right to intervene under Rule 24(b)(2).[5]

5. Rule 24(b)—*Permissive Intervention.* Upon timely application anyone may be permitted to

intervene in an action:

That subsection permits intervention when "an applicant's claim or defense and the main action have a question of law or fact in common." The Rule goes on to state that "[i]n exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." A court may also consider "the nature and extent of the intervenor's interests, whether the intervener's participation will contribute to the just and equitable adjudication of the issues, and whether the intervener's are adequately represented by the parties of record." *Citizens for an Orderly Energy Policy, Inc. v. County of Suffolk,* 101 F.R.D. 497, 502 (E.D.N.Y.1984). A district court's discretion under Rule 24(b) is quite broad. *H.L. Hayden Co. of New York v. Siemens Medical,* 797 F.2d 85, 89 (2d Cir.1986); *SEC v. Everest Management Corp.,* 475 F.2d 1236, 1240 (2d Cir.1972).

Consideration of these factors leads the Court to conclude that intervention is inappropriate. Petitioner takes no position on the question of law presented in this case—whether the state's sole reliance upon SAT scores in awarding Regents and Empire scholarships violates either civil rights statutes or the equal protection clause of the U.S. Constitution. Rather, petitioner merely challenges the enforcement of this Court's preliminary injunction order entered on February 3, 1989. In doing so, petitioner does not raise any questions of law or fact that are presently before this Court and that are in common with the parties.[6] The additional burden which would be imposed on the court and the parties by the proposed intervention cannot be justified in view of the minimal extent to which the District's participation would contribute to the just and equitable resolution of the issues raised in this action.[7] Therefore, permissive intervention is inappropriate.

### III. *Conclusion*

Accordingly, petitioner's motion to intervene is denied. Petitioner may, however, continue to participate as *amicus curiae.*

SO ORDERED.

---

(2) when an applicant's claim or defense and the main action have a question of law or fact in common.

. . . . .

in exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

**6.** The Court notes that the issues the District raises may soon become academic. According to the SED, a proposed scholarship examination has already been pre-tested and will be ready for use in October, 1989, if the legislature authorizes its use. Moreover, the SED has already reviewed the information submitted by every school submitting weighted grades, and has required the resubmission of grades by those schools whose weighing policies do not comply with the SED's reporting requirements. Byrne Aff. ¶ 2–3 (dated March 17, 1989).

**7.** *See Sierra Club v. United States Army Corps of Engineers,* 709 F.2d 175, 177 (2d Cir.1983) (per curiam); *Alston v. Coughlin,* 109 F.R.D. 609 (S.D.N.Y.1986).