Khadijah **SHARIF**, by her mother and next friend, Amida **SALAHUDDIN**; et al., Plaintiffs,

v.

**NEW YORK STATE EDUCATION DEPARTMENT; and Thomas Sobol, Commissioner of Education, in his official capacity, Defendants.**

No. 88 Civ. 8435 (JMW).

United States District Court, S.D. New York.

July 19, 1989.

Isabelle Katz Pinzler, Kary Moss, Deborah Ellis, Joan Bertin, Women's Rights Project, American Civil Liberities Union Foundation, New York City (Helen Hershkoff, John A. Powell, of counsel, American Civil Liberties Union), Vivenne W. Nearing, Robert Lewin, Madelaine R. Berg, Elizabeth A. Sherwin, Lisa Rosenthal, Mary S. Feinstein, Regan A. Shulman, Stroock & Stroock & Lavan, New York City, Robert M. Levy, New York Civil Liberties Union New York City, for plaintiffs.

Marion R. Buchbinder, Anne B. Ehrenkranz, Asst. Attys. Gen., New York City, for defendants.

### MEMORANDUM and ORDER

WALKER, District Judge:

Plaintiffs—ten named high school students and two organizational plaintiffs—bring this action for declaratory and injunctive relief against the State Education Department ("SED") and Commissioner of Education Thomas Sobol, alleging that New York's exclusive reliance on the Scholastic Aptitude Test ("SAT") to award Empire and Regents scholarships discriminates against female students in violation of the equal protection clause of the Fourteenth Amendment to the U.S. Constitution, Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681 *et seq.*, and the regulations enacted pursuant to Title IX, 34 CFR Part 106. On February 3, 1989, this Court granted plaintiffs' request for a preliminary injunction, ordering that New York refrain from awarding its 1989 merit scholarships based on SAT scores alone. *See Sharif By Salahuddin v. N.Y. State Educ. Dept.,* 709 F.Supp. 365 (S.D.N.Y.1989). Since New York has not permanently changed its merit scholarship selection process, this case is still before the Court on plaintiff's request for declaratory and permanent injunctive relief.

Plaintiffs now move pursuant to Rule 23 of the Fed.R.Civ.P. for an order certifying the action as a class action. The proposed class consists of "all female high school seniors in New York state who are or will be applicants for Regents College Scholarships and Empire State Scholarships of Excellence." For the reasons set forth below, plaintiffs' motion for class certification is granted.

### I. BACKGROUND

The background of this case is set forth in detail in previous decisions of this Court and familiarity with those opinions is presumed. *See Sharif By Salahuddin,* 709 F.Supp. 365 (S.D.N.Y.1989). In brief, this case concerns the validity of New York's practice of awarding Regents and Empire scholarships—which are intended to recognize past high school achievement—based solely on SAT scores. From 1977 to 1986, the SED's sole criteria for these merit scholarships was national scholastic examination scores, primarily the SAT.

It is undisputed that female high school seniors, as a group, consistently score an average of sixty points lower on the SAT than their male counterparts.[1] It is also undisputed that female high school seniors, as a group, perform as well or better in high school courses and in other indicia of scholastic ability. Defendants' reliance on the SAT as the single criterion for awarding the state merit scholarships resulted in a consistent pattern: females received only 43% and 28% of the Regents and Empire State Scholarships, respectively, although they represented approximately 53% of the applicant pool.

In 1987, the New York State legislature enacted a law requiring defendants to integrate better indicia of high school achievement into the eligibility criteria used for awarding the scholarships. The law was prompted in part by defendants' own observations that female test-takers as a group consistently score lower than male test-takers as a group. Pursuant to this law, defendants employed both SAT scores and

---

1. Why this is so—the subject of much policy debate—is not at issue in this action. This case concerns itself not over whether the test unfairly discriminates against women, but whether New York's use of SAT scores as the sole criterion for rewarding high school performance is unfairly discriminatory against women.

grade point averages ("GPAs"), weighted equally, as the basis for awarding the scholarships in the 1987–1988 scholarship year. This formula improved the balance of scholarships awarded to females in relation to males: females, who comprised 53.3% of the applicant pool, received 49.3% and 37.4% of the Regents and Empire State scholarships, respectively.

The law mandating the adoption of alternative selection criteria was, by its terms, limited to the 1987–1988 academic year. When the law expired, the SED planned to return to the SAT-only selection criterion. In December, 1988 plaintiffs, New York high school seniors who took the SAT in either the Spring or Fall of 1988, petitioned this Court for a preliminary injunction to prevent defendants from using the SAT as the single eligibility criterion for awarding the 1989 scholarships. On February 3, 1989, after a full-day evidentiary hearing and upon careful review of the parties' extensive submissions, the Court granted plaintiffs' request for a preliminary injunction. *Sharif by Salahuddin,* 709 F.Supp. at 365.

Plaintiffs ultimately seek a permanent injunction to prohibit defendants from relying solely on the SAT in determining scholarship eligibility. Plaintiffs allege that the continued use of demonstrably gender-biased selection criteria violates the equal protection clause of the Fourteenth Amendment to the U.S. Constitution, Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681 *et seq.,* and the regulations enacted pursuant to Title IX, 34 CFR Part 106. Plaintiffs now seek class certification.

## II. DISCUSSION

### A. *Rule 23(a)*

The prerequisites to a class action are set forth in F.R.Civ.P. 23(a) as follows:

One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is sufficiently numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Rule 23 is given liberal rather than restrictive construction, and courts are to adopt a standard of flexibility in application in order to best serve the ends of justice and promote judicial economy. *See e.g., In re A.H. Robins Co.,* 880 F.2d 709 (4th Cir. 1989). Moreover, if an error is to be made with respect to class certification, it is to be "in favor and not against the maintenance of a class action." *Gordon v. Hunt,* 98 F.R.D. 573, 577 (S.D.N.Y.1983), *discussing Green v. Wolf Corp.,* 406 F.2d 291, 298 (2d Cir.1968), *cert. denied,* 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969).

When considering whether to certify a class, the court should take the allegations of the merits of the case, as set forth in the complaint, to be true. *Eisen v. Carlisle & Jacquelin,* 391 F.2d 555, 561 (2d Cir.1968), *vacated and remanded on other grounds,* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). The party who seeks to utilize Rule 23 bears the burden of establishing that the requirements of that rule are satisfied. *East Texas Motor Freight System, Inc. v. Rodriguez,* 431 U.S. 395, 405, 97 S.Ct. 1891, 1897, 52 L.Ed.2d 453 (1977); *In re Gulf Oil/Cities Service Tender Offer Litigation,* 112 F.R.D. 383 (S.D.N.Y.1986). The Court finds that plaintiffs have met their burden in the present case.

The first prerequisite, numerosity, is clearly satisfied here. It is undisputed that there are approximately 53,000 female high school seniors throughout New York state who are or will be applicants for the scholarships in 1989 alone. This is more than sufficient to satisfy the numerosity requirement of Rule 23(a)(1). *See, e.g., Korn v. Franchard Corporation,* 456 F.2d 1206, 1209 (2d Cir.1972) (70 member class); *Fidelis Corporation v. Litton Industries Inc.,* 293 F.Supp. 164, 170 (S.D.N.Y.1968) (35–70 member class); *Sharon Steel Corp. v. Chase Manhattan Bank, N.A.,* 88 F.R.D. 38, 44 (S.D.N.Y.1980) (87 member class). Moreover, defendants do not dis-

pute that joinder of the estimated 53,000 class members would be impracticable.

■ The second requirement, commonality, is also satisfied. Rule 23(a)(2) requires only that questions of law or fact be shared by the prospective class. The rule does not require that all questions of law or fact are common; it only requires that common questions predominate over individual ones. *Laurido v. Simon*, 489 F.Supp. 1169, 1175 (S.D.N.Y.1980); *Dura–Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 93 (S.D.N.Y.1981). Plaintiffs set forth five questions of law and fact which the Court finds are common to the class, central to plaintiffs' claims, and sufficient to satisfy the requisite commonality.[2]

■ That female scholarship applicants have difference academic abilities does not negate the existing commonality. Rule 23(a) requires only that the legal or factual questions which link class members are substantially related to resolution of the litigation, even though individuals are not identically situated. *See In re Gulf Oil*, 112 F.R.D. at 386, *citing Dura–Bilt*, 89 F.R.D. at 93. This requirement has been deemed satisfied if the claims of all class members derive from a common nucleus of operative fact. *See e.g., Cohen v. Uniroyal, Inc.*, 77 F.R.D. 685, 690 (E.D.Pa.1977). A common nucleus of facts *and* claims is evident here. The individual differences among proposed class members do not affect plaintiffs' central claim that all members of the class have been denied their rights because of the SED's practice of awarding state merit scholarships based solely upon SAT scores. Thus, the commonality requirement is satisfied.

■ The next requirement, under Rule 23(a)(3), is that the claims of the named class representatives be typical of those of the class as a whole. Plaintiffs' claims satisfy the typicality requirement if they arise "from the same event or course of conduct that gives rise to claims of other class members and the claims are based on the same legal theory." *Dura–Bilt*, 89 F.R.D. at 99. Under such circumstances, "by advancing their own interests, plaintiffs will advance the interests of the class." *Id.* (citations omitted). Since the same SED practice gives rise to the claims of all members of the proposed class, it appears that plaintiffs' claims satisfy the typicality requirement. Nevertheless, to succeed under 23(a)(3), plaintiffs must also demonstrate that there are no antagonistic or adverse interests between the named representative and the proposed class. *Eisen v. Carlisle and Jacqueline*, 391 F.2d 555, 562–63 (2d Cir.1968), discussed in *Rueckert v. Sheet Metal Workers Int'l Ass'n*, 77 F.R.D. 409 (S.D.N.Y.1977). Defendants' opposition to class certification focuses on alleged conflict within the proposed class.

■ Defendants contend that any change in the scholarship criteria would benefit some females at the expense of others who would win a scholarship but for the change.[3] Defendants base their argument upon the results of the 1987–1988 scholarship year. Although scholarships were actually awarded based on both the SAT and GPA during that period, the Division of Educational Testing of the New York State Education Department recorded which candidates would have won scholarships if eligibility had been based on SAT scores alone. This record indicates that

---

2. These questions are:
   1. Do defendants classify applicants for the scholarships solely on the basis of their SAT scores?
   2. Does such classification result in female applicants receiving a disproportionately lesser number of scholarships?
   3. Is such classification irrational and a violation of plaintiffs' and other class members' equal protection rights?
   4. Does use of the SAT alone violate Title IX's proscriptions against discriminating on the basis of gender?

   5. Does defendants' use of the SAT to award the scholarships violate the regulations enacted pursuant to Title IX?

3. In their opposition papers, defendants restate this general argument several times, in an attempt to delineate several distinct points. Since defendants' claims rest upon the same premise and cannot be distinguished in any principled manner, the Court will not address each argument individually.

1,561 female Regents Scholarship applicants would have won under the SAT-only regime, but did not win under the combined SAT and GPA criteria. The record also indicates that 3,003 of the 12,325 females who won Regents Scholarships under the revised criteria would not have won under the SAT-only regime. Defendants argue these results demonstrate the existence of antagonism among members of the proposed class and automatically negates the Rule 23(a)(2), (3), and (4) requirements of commonality, typicality, and adequacy of representation. This argument is without merit.

Defendants' assertion that the permanent adoption of nongender-biased selection criteria will "injure" some proposed class members merely reveals their fundamental misunderstanding of plaintiffs' claim. Plaintiffs, by their action, do not seek entitlement to particular awards but only a "level playing field" in the form of a fair, non-discriminatory scholarship selection procedure that is unbiased against female applicants. Elimination of discriminatory selection criteria will benefit *all* members of the proposed class as it will increase the net chances of females receiving scholarships in relation to male applicants. A prospective class member who may have won a scholarship under the SAT-only system, would not be "injured" under law if she does not win a scholarship under revised, non-gender-biased criteria that better advance the state's goal of awarding past high school achievement and enhance the ability of all students to compete equitably for scholarship. Courts simply do not recognize such an injury; the "conflict" as described by defendants is not a true conflict within the meaning of Rule 23(a)(3).[4]

Defendants concede that differences of opinion or differing levels of interest in the litigation among prospective class members will not alone defeat the adequacy or typicality requirements of Rule 23(a). *See Arthur v. Starrett City Associates*, 98 F.R.D. 500, 505 (E.D.N.Y.1983). Indeed, if all members of the proposed class will benefit by the relief sought, individual apathy or preference for the status quo will not defeat the typicality of the plaintiff's claim. *See e.g. Norwalk C.O.R.E. v. Norwalk Redevelopment Agency*, 395 F.2d 920, 937 (2d Cir.1988). As Judge Ward of this district has noted, "[t]he fact that there may be conflicting interests within the class because some members of the class may be personally satisfied with the existing system and may prefer to leave the violations of their rights unremedied is simply not dispositive of a determination under Rule 23(a)." *Wilder v. Bernstein*, 499 F.Supp. 980, 993 (S.D.N.Y.1980).

The essential question is whether an alleged conflict goes "to the very subject matter of the litigation." *Gordon v. Hunt*, 98 F.R.D. 573 (S.D.N.Y.1983); *Kuck v. Berkey Photo, Inc.*, 81 F.R.D. 736, 740 (S.D.N.Y.1979). The alleged conflict in this case is illusory and does not go to the very subject matter of the litigation. Under the SAT-only scholarship criteria, due to the demonstrated disparity between the SAT scores of make and female test takers, the chances of receiving one of the scholarships are reduced for every class member in comparison to those of male applicants. This injury is sustained by *all* class members regardless of whether they ultimately receive the scholarships. Since the purported conflict does not go to the heart of the relief sought, it is proper to certify the class.[5]

Defendants also claim that plaintiffs' claims are not typical since none of the named plaintiffs could win an Empire State Scholarship and only three of the

---

4. The cases cited by defendants which refused to certify a class are clearly inapposite since in those cases, unlike the present, class member's interests were truly in conflict. For example, in *In re Gulf Oil/Cities Service Tender Offer Litigation*, 112 F.R.D. 383, 388 (S.D.N.Y.1986), some class members were currently employed by the defendants and, thus, their interests were "potentially adverse" to other members of the proposed class. Similarly, in *TBK Partners v. Chomeau*, 104 F.R.D. 127 (E.D.Mo.1985), plaintiff was subject to certain claims and defenses which other class members were not.

5. The Court notes that not one putative class member has come forward to object to either class certification or the relief sought.

individuals would have an increased chance of winning a Regents Scholarship if grade point averages are considered in the award formula. This argument is bottomed upon the same reasoning as defendants' conflict claim and fails for the same reasons. The named plaintiffs seek to vindicate their rights to compete for the scholarships in the absence of gender bias, not to claim a particular scholarship award. Thus, they adequately represent the class for the purpose of challenging defendants' sole use of the SAT to award scholarships—a method which has negatively impacted the class as a whole.

■ The final requirement, Rule 23(a)(4), requires that the named class representatives and their counsel are capable of fair and adequate representation of the interests of the class as a whole. Accordingly, a court must inquire whether the proposed representatives: (1) are able to act as fiduciaries in protecting the interests of the class, (2) have a substantial stake in the controversy, (3) possess adequate resources for the prosecution of the claim, (4) are motivated by reasons other than those relating to the cause, and (5) have any conflicting interests with the class. *Esler v. Northrop Corp.*, 86 F.R.D. 20, 36 (W.D. Mo.1979). *See also In re Gulf Oil*, 112 F.R.D. at 387–88; *Klein v. A.G. Becker Paribas Inc.*, 109 F.R.D. 646, 651 (S.D.N.Y. 1986).

■ Plaintiffs' petition for preliminary injunction and the present motion for class certification indicate that plaintiffs are quite able to adequately represent the interests of the class as a whole. Plaintiffs' counsel are experienced in civil rights class actions, and defendants do not dispute their ability to fairly and adequately protect the interests of the class. Furthermore, as discussed above, alleged conflicts among class members are illusory. Of course, if during a later stage of the litigation there is reason to question the adequacy of representation, the Court may modify this order to protect the due process rights of the absent class members. Fed.R.Civ.P. 23(c)(1), (d)(2). At the present time, how-ever, the Court is persuaded that plaintiffs satisfy all prerequisites set forth in Rule 23(a).

### B. *Rule 23(b)*

■ In addition to the requirements prescribed by Fed.R.Civ.P. 23(a), a moving party must demonstrate that the putative class also fits into one of the three categories set forth in section 23(b). Plaintiffs claim that the proposed class falls under Fed.R.Civ.P. 23(b)(2) which applies when "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class a whole[.]" This portion of the class action device was designed for situations where a party has behaved in a certain manner with respect to an identifiable class, and injunctive or declaratory relief settling the legality of the behavior with respect to the class is appropriate. *See* Note on Amendments to Federal Rule 23. Rule 23(b) is commonly invoked in civil rights class actions in which one party is charged with discriminating unlawfully against a class. *See e.g. Avagliano v. Sumitomo Shoji America, Inc.*, 103 F.R.D. 562 (S.D.N.Y.1984).

Defendants do not dispute that they maintain a policy which affects all members of the proposed class in a similar manner; all female students chances of receiving scholarships are decreased under the SAT-only scholarship regime. The remedy sought is injunctive relief which affects the ability of all female applicants to receive state scholarships. Thus, a Rule 23(b)(2) class action is appropriate.

### III. CONCLUSION

The Court finds that the proposed class meets all four requirements of Rule 23(a), and stands firmly within the scope of Rule 23(b)(2). Accordingly, plaintiffs' motion for class certification is granted. The parties shall appear before the Court at a status conference on July 28 at 10:30 am.

SO ORDERED.